JAMES CLYDE WOODELL AND JAMES RODNEY
MERCER *v.* STATE OF MARYLAND

[No. 322, Initial Term, 1967.]

434

*Decided November 16, 1967.*

The cause was argued before MURPHY, C. J., and ANDER-
SON, MORTON, ORTH, and THOMPSON, JJ.

*Michael J. Cuff* for appellants.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with
whom were *Francis B. Burch, Attorney General,* and *Arthur
A. Marshall, Jr., State's Attorney for Prince George's County,*
on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellants were each found guilty of attempted store-
house breaking and being a rogue and vagabond by a jury on
December 13, 1966 in the Circuit Court for Prince George's
County. They were sentenced by Judge Samuel W. H. Meloy
to terms of three years and one year imprisonment on the re-
spective charges, to run concurrently, in the Maryland Peni-
tentiary. The questions presented on this appeal pertain prin-
cipally to the admissibility into evidence of certain objects found
near the scene of appellants' arrest and the propriety of ques-
tions propounded by the State's Attorney on cross-examination
of the appellant Mercer relating to his prior criminal record.

The evidence adduced at the trial showed that on the morn-
ing of October 17, 1966, at approximately 1:30 a.m., two men,
later identified as the appellants, were observed near the door to
the rental office of the Lakeside North Apartments in Green-
belt, Maryland by Mr. and Mrs. Milo Pallaggo, the tenants in
the apartment immediately above the rental office. Mr. Pallaggo
testified that he was attracted by "a thumping noise" beneath

his bedroom window; that he observed two men standing about six feet from the door, one of whom he heard say to the other, "Jimmy the s.o.b."; that he then called the police, after which he observed the two men walk away; that the police arrived shortly thereafter, and he pointed out appellants as the two men he had seen at the rental office door; and that appellants were only about fifty to seventy-five yards from the rental office when apprehended by the police. Mrs. Pallaggo testified that appellant Mercer walked away from the door after he had observed her looking at him through the window.

Immediately after the appellants were taken into custody by police, fresh jimmy marks were found on the door of the rental office, and the doorjamb had been pried away for an area of about four inches. A search of the wooded area near where the appellants were apprehended was immediately undertaken and a flashlight, a pair of gloves and a crowbar were found lying in the grass. These articles when found were dry, while the grass surrounding them was wet. At the trial, the articles were admitted into evidence over appellant's objection that they were inadmissible since there was no evidence connecting them with the articles, and because, when arrested, the articles were not "found upon" them, as required for a conviction on the rogue and vagabond charge.

It is well settled that evidence need not be positively connected with the accused or the crime committed in order to render it admissible; it is admissible where there is a probability of its connection with the accused or the crime, the lack of positive identification affecting the weight of the evidence, rather than its admissibility. *Daniels v. State,* 213 Md. 90; *St. Clair v. State,* 1 Md. App. 605; *Stewart v. State,* 1 Md. App. 309. It is equally well settled that where a person is charged, as were appellants, under that part of the rogue and vagabond statute (Maryland Code, Article 27, Section 490), proscribing "having upon" him, *inter alia,* implements at places, and under circumstances, from which an intent may be presumed feloniously to break and enter into a storehouse, it is not necessary to prove actual physical possession at the time of the arrest, an inference drawn from proper evidence sufficing to establish the requisite elements of the offense. *Shipley v. State,* 243 Md. 262;

*Wright v. State,* 222 Md. 242; *Thomas v. State,* 1 Md. App. 528. That there was a probability of a connection of the gloves, flashlight, and crowbar with the appellants is, we think, so abundantly clear from the evidence as to require no extended discussion. We hold, therefore, that these items were sufficiently connected with appellants' activities as to warrant their admission into evidence on both the storehouse breaking and rogue and vagabond charges.

Appellants next contend that the rogue and vagabond statute is unconstitutional, since it "makes criminal the mere possession of certain implements at places and under circumstances from which felonious intent is presumed." While on its face the contention appears frivolous, we do not decide it, since a question as to the constitutionality of a statute will not be considered on appeal where, as here, the question was not raised in the lower court. Maryland Rule 1085. See also *Gonzales v. Ghinger,* 218 Md. 132. We nevertheless point out that all presumptions favor the constitutionality of a duly enacted statute and it will not be declared unconstitutional unless it plainly contravenes the federal or state constitutions. *Baltimore Transit Company v. Metropolitan Transit Authority,* 232 Md. 509.

It is also contended that the State's Attorney's cross-examination of the appellant Mercer with respect to his prior criminal record was prejudicial, not only as to him, but also, by reason of association, to Woodell, his co-defendant and co-appellant. The record indicates that the State's Attorney, after asking Mercer about two prior criminal convictions, which he admitted, proceeded to question him concerning convictions of assault by threat, public drunkenness, worthless check, and exceeding the speed limit in a motor vehicle, all of which allegedly occurred in Raleigh, North Carolina. Mercer stated that he did not remember the assault and drunkenness convictions, that he had not been convicted of worthless check or of speeding, and that he had never been in Raleigh, North Carolina. Apparently stunned by this denial, the State's Attorney alluded to Mercer's F.B.I. record, and asked Mercer whether he thought anyone else had his fingerprints, the clear implication intended to be conveyed to the jury being that the State's Attorney had access to Mercer's F.B.I. record which indicated that he had indeed been convicted

of these offenses. The State's Attorney did not otherwise proffer to show that the appellant had been convicted of these crimes.

In *Cook v. State,* 225 Md. 603, a jury case, the State's Attorney asked the defendant about a prior conviction, which the defendant denied. The State's Attorney did not proffer to show that the appellant had in fact been convicted of the crime. The accused moved for a mistrial, which the court declined to grant, instead undertaking on its own initiative to instruct the jury that the only evidence before them was that the defendant had not been convicted of the crime concerning which the State inquired; and that they were not to draw any contrary inference from the State's Attorney's question. The Court of Appeals noted at page 609 that the State's Attorney did not "ask leave of the court to explain to the jury that he desired to disclaim any intimation from his question that the defendant had previously been convicted of a crime." The court held that the questions were "highly improper in the absence of the State being able to establish that the defendant had been convicted in accordance with the statement of the State's Attorney" and that "were it not for the care with which the trial court explained the matter to the jury, [it] would require a reversal of the judgment and a new trial." *Cook v. State, supra,* at page 609.

The present case presents a more extreme example than that contained in *Cook,* since here the State's Attorney sought to buttress his intimation that Mercer was lying in denying the convictions by referring to his criminal record on file with the F.B.I. (an organization held in high public esteem). It is elementary that a prosecutor who receives a negative response from a witness to a question seeking to elicit the fact of a prior criminal conviction having some tendency to impeach the credibility of the witness may prove such conviction (but not the details of the commission thereof [1]), by producing properly authenticated evidence of the judgment of conviction. See Maryland Code (1965 Repl. Vol.), Article 35, Section 10, providing for proof of a conviction for an "infamous crime" by a certificate under the seal of the clerk of the court where the conviction was rendered; *Green v. State,* 161 Md. 75, at page 84 (involving a charge of rape and therefore of an infamous crime) pro-

---

1. See *Huber v. State,* 2 Md. App. 245.

viding for such proof "by record or by the certificate authorized by the statute" (now Section 10 of Article 35) ; and Sections 76 and 81 of Article 35 providing for the admissibility into evidence of certified copies of court records, including judgments. See also 4 *Wigmore on Evidence* (3rd Edition) Section 1270; *Underhill's Criminal Evidence* (5th Edition) Section 245; *McCormick on Evidence,* Sections 291-295. If the State's Attorney chooses not to offer appropriate evidence of the prior conviction, he should, under the dictates of *Cook,* seek leave of court to explain to the jury that he disclaims any intimation from his question that the defendant had previously been convicted of such crime. Failure to do so may result in an appellate reversal of the conviction where the error cannot be deemed harmless, and the point is properly preserved for review on appeal.

Appellants here entered no objection to the questions propounded by the State's Attorney, and neither moved for a mistrial nor sought an advisory instruction from the court as they might have done under *Cook.* Under these circumstances, the matter was not before the trial judge for a ruling and consequently is not properly before us for review. Maryland Rule 1085; *Cousins v. State,* 230 Md. 2; *Smith v. State,* 1 Md. App. 297; *Whitmer v. State,* 1 Md. App. 127. For the same reason, we do not pass upon appellants' further contention that it was reversible error to permit the State's Attorney to ask appellant Mercer about prior convictions for exceeding the speed limit and disobeying a superior officer while in the military service.[2]

*Judgments affirmed.*

---

2. We nevertheless observe that it is an elementary rule that while evidence of the accused's previous conviction of crime need not be restricted to infamous crimes or those involving moral turpitude, a violation of law must have some tendency to show that the witness is not to be believed under oath. *Cousins v. State, supra; Boone v. State,* 2 Md. App. 80. A conviction of speeding is clearly not such an offense, *Nelson v. Seiler,* 154 Md. 63, nor is a court martial conviction for disobeying a superior officer while in the military service, *Huber v. State, supra.* As we held in *Huber,* in order for evidence of prior court martial convictions of a witness to be admitted for the purpose of impeaching the witness's credibility, the conviction must involve an act of moral turpitude, which is not purely a matter of military discipline, and which is a crime under the general law.