BACHELLER, ET AL. *v.* STATE OF
MARYLAND

[No. 52, September Term, 1967.]

628

*Decided April 15, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and CHILDS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Anthony G. Amsterdam,* with whom was *Fred E. Weisgal* on the brief, for appellants.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Alan B. Lipson, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

On April 19, 1966, the appellants were tried in the Municipal Court of Baltimore and convicted of disorderly conduct in vio-

lation of Article 27, section 123, Maryland Code (1967 Repl. Vol.). Appellants were each sentenced to a term of sixty days in the Baltimore City Jail and fined fifty dollars plus costs. An appeal was duly noted and a trial *de novo* granted. Trial was held in the Criminal Court of Baltimore on June 8, 1966, before a jury, Judge J. Gilbert Prendergast presiding. Appellants were found guilty and each was sentenced to sixty days in the Baltimore City Jail and fined fifty dollars plus costs.

Appellants raise seven allegations of error on appeal:

1. That Article 27, section 123 is unconstitutional on its face under the First and Fourteenth Amendments to the Constitution of the United States.

2. That Article 27, section 123 as applied was an unconstituitonal abridgement of the appellants' right of free speech, expression, petition and assembly, guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

3. That appellants' convictions violate the First and Fourteenth Amendments because the trial court refused to instruct the jury that appellants had a Constitutional right to express their political beliefs and that the jury could not convict on the basis of a disagreement with appellants' expressed views.

4. That the denomination of appellants' cause before the jury as an "appeal" deprived them of their statutory right to a trial *de novo* in the Criminal Court of Baltimore City, and their Federal Constitutional right to a fair trial.

5. That the refusal of the trial court to question jurors on the voir dire examination about relatives serving in Vietnam deprived appellants of their statutory right to challenge jurors for cause.

6. That the trial court committed reversible error in reopening the case to allow the testimony, highly prejudicial to the appellants, of a witness for the prosecution who had been taught and prompted by the content of the previous testimony.

7. That the trial court committed reversible error by failing to give a promised instruction that the Jury should ex-

clude from consideration the evidence of events inside the recruiting station.

The evidence adduced below established that on Monday, March 28, 1966, at approximately 3 :00 p.m., a group comprised of 30 to 40 demonstrators, evidencing dissatisfaction with the United States policy in the Vietnam conflict, congregated outside the United States Recruiting Station at 3328 Greenmount Avenue, Baltimore, Maryland. Subsequently, three of the appellants entered the Recruiting Station and demanded, through their spokesman, Harding, that their protest posters be displayed inside. This request was rejected and the appellants refused to leave until there was compliance with their demand. Thereafter, the three additional appellants also entered and joined the original three.

Mr. Frank Udoff, United States Marshal for the District of Maryland, approached the appellants shortly before the usual 5 :00 p.m. closing time, identified himself, and requested them to leave peacefully. This request was rejected and it became necessary for Mr. Udoff to deputize several Baltimore City policemen to assist in the physical removal of the appellants to the sidewalk outside. By stipulation, there was no dispute as to the authority of the Marshal to so remove the appellants.

Some appellants were carried outside and deposited in a prone position upon the sidewalk while others were escorted out. Two appellants attempted to crawl back to the doorway and thus bar its closing.

Appellants then assumed either a semi-circular sitting or prone position, fully blocking the ten to twelve foot sidewalk for picketers and pedestrians alike. This performance attracted a gathering of between 80 and 100 onlookers. Some of the gathering became hostile and hurled statements at the demonstrators inclusive of "let's get them," "we'll take care of them." As the crowd increased its discontent, the police found it necessary to hold the crowd back and to intercede between the two elements. As the situation grew more tense and the anger grew, additional sentiments were hurled from the crowd, such as, "Bomb Hanoi," "let's get them, I'll bust him in the mouth." The resultant turmoil was such that the police found it necessary to fend off

the crowd's attempt to vent its displeasure on the demonstrators and to ward off the trampling of the appellants. The size of the crowd continued to increase.

At this juncture, the appellants were ordered by police to get up, but they declined to abide by the order. As the possibility of violence increased the order was repeated three times, but appellants continued to refuse to respect the order. Subsequently, the officers arrested the appellants and charged them with disorderly conduct directly arising out of the obstruction of the sidewalk which consequentially was causing a public disturbance and the specific refusal to comply with three lawful commands of the police officers.

## I and II

The thrust of the appellants' first and second contentions is that Article 27, section 123, Maryland Code Annotated (1967 Repl. Vol.), fails to afford sufficient fair warning that the conduct herein engaged in was subject to criminal sanctions and is therefore unconstitutionally vague and indefinite; and that, furthermore, the application of the statute infringed upon the rights protected by the First and Fourteenth Amendments.

All statutes come before this Court cloaked in a presumption of constitutionality. Therefore, any challenge levied at the constitutionality of a duly enacted statute must clearly establish that said statute plainly contravenes the Federal or State Constitutions, otherwise the presumption remains unrebutted and the statute will not be declared unconstitutional. See *Woodell v. State,* 2 Md. App. 433, 437, 234 A. 2d 890 (1967). Clearly, a statute is within the guidelines of the constitutional safeguards only if persons of ordinary intelligence would be able to know when their conduct would place them in violation of the specified statutory prohibition. *Connally v. General Construction Co.,* 269 U. S. 385, 46 S. Ct. 126, 70 L. Ed. 322 (1926) ; *Lanzetta v. New Jersey,* 306 U. S. 451, 59 S. Ct. 618, 83 L. Ed. 888 (1939). However, while compelling strict compliance to such guidelines, the Federal Constitution refrains from the imposition of impossible standards of specificity in the construction of penal statutes. The primary requirement is that a statute convey "sufficiently definite warning as to the proscribed conduct when

measured by common understanding and practice." *United States v. Petrillo,* 332 U. S. 1, 8, 67 S. Ct. 1538, 91 L. Ed. 1877 (1947); *United States v. Woodard,* 376 F. 2d 136, 140 (1967).

The formulation of statutory language is, at best, an inexact exercise vulnerable to varying degrees of doubt and ambiguity. Therefore, the enunciation of the meaning and ambit of a specific statute by judicial construction strives to ascertain and define the legislative intent and purpose, and upon making of a determination of the legislative meaning the efficacy of the statute is more clearly and precisely promulgated.

In making our determination of the instant statute's constitutional posture, we remain attentive to the observation of Mr. Justice Holmes in *Roschen v. Ward,* 279 U. S. 337, 49 S. Ct. 366, 73 L. Ed. 722 (1929), when he stated at page 339:

> "We agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean."

Article 27, section 123, Maryland Code (1967 Repl. Vol.), states in pertinent part:

> "Every person who shall be found drunk, or acting in a disorderly manner to the disturbance of the public peace, upon any public street or highway, in any city, town or county in this State * * * shall be deemed guilty of a misdemeanor; and upon conviction thereof, shall be subject to a fine of not more than fifty dollars, or be confined in jail for a period of not more than sixty days or be both fined and imprisoned in the discretion of the court * * *."

In rejecting a prior contention that the statute was unconstitutional on its face, the Court of Appeals in *Drews v. State,* 224 Md. 186, stated at page 192, through Judge Hammond (presently Chief Judge) that:

> "The gist of the crime of disorderly conduct under Sec. 123 of Art. 27, as it was in the cases of common law predecessor crimes, is the doing or saying, or both, of

that which offends, disturbs, incites, or tends to incite a number of people gathered in the same area. * * * Also, it has been held that failure to obey a policeman's command to move on when not to do so may endanger the public peace, amounts to disorderly conduct."

In *Sharpe v. State,* 231 Md. 401, 404, 190 A. 2d 628 (1963), while the Court of Appeals did not reach the question of whether the charge of disorderly conduct could be justified, it did observe that "[r]efusal to obey a proper order of an officer *may constitute* an offense justifying an arrest, particularly where there is profanity in the presence of others that may threaten a breach of the peace. Cf. *Drews v. State,* 224 Md. 186, 192 and cases there cited. See also *Lippert v. State,* 139 N. Y. S. 2d 751, *City of St. Petersburg v. Calbeck,* 121 So. 2d 814 (Fla.) ; *City of Saint Paul v. Morris,* 104 N. W. 2d 902 (Minn.). Other cases are collected in a note, 34 A.L.R. 566." (Emphasis added).

Then in *Harris v. State,* 237 Md. 299, 303, 206 A. 2d 254 (1965), the Court of Appeals stated:

"A failure to obey a reasonable and lawful request by a police officer fairly made to prevent a disturbance of the public peace constitutes disorderly conduct. *Sharpe v. State,* 231 Md. 401, 190 A. 2d 628; *Drews v. State,* 224 Md. 186, 167 A. 2d 341 (vacated on other grounds, 378 U. S. 547, 12 L. Ed. 2d 1032)."

Our review, therefore, is directed not only to the statute per se but to the judicial construction of same, as the cumulative effect constitutes the controlling constitutional posture of the statute at the time of the alleged offense. *Shutlesworth v. City of Birmingham,* 382 U. S. 87, 92, 86 S. Ct. 211, 15 L. Ed. 2d 176 (1965) ; *Ashton v. Kentucky,* 384 U. S. 195, 198, 86 S. Ct. 1407, 16 L. Ed. 2d 469 (1966).

It is of considerable significance that the prior constitutional challenge levied upon this specific statute and section in *Drews v. State, supra,* 224 Md. 186, reversed and remanded on other grounds in *Drews v. Maryland,* 378 U. S. 547 (1964) was affirmed on remand in *Drews v. State,* 236 Md. 349, 204 A. 2d

64 (1964) and the appeal was dismissed and certiorari denied in *Drews v. Maryland,* 381 U. S. 421 (1965). This in conjunction with the fact that similar disorderly conduct statutes have been held constitutional by the United States Supreme Court in *Feiner v. New York,* 340 U. S. 315, 71 S. Ct. 303, 95 L. Ed. 267 (1951), and *Chaplinsky v. New Hampshire,* 315 U. S. 568, 62 S. Ct. 766, 86 L. Ed. 1034 (1942) leads us to conclude that statutes of this kind are not repugnant to the Federal Constitution.

In *Feiner v. New York,* 340 U. S. 315, 318, 71 S. Ct. 303, 95 L. Ed. 267 (1951), the Supreme Court upheld the conviction of Feiner for violation of § 722 of the Penal Law of New York.[1]

In that case, Feiner's activity was observed by the police without interference until, observing the changing tenor of the crowd, both for and against his expressed views, the police on three occasions, requested him to cease and desist. He refused to do so and the police finally "stepped in to prevent it from resulting in a fight."

In affirming, the Court stated at page 320:

> "This Court respects, as it must, the interest of the community in maintaining peace and order on its streets. *Schneider v. State,* 308 U. S. 147, 160 (1939); *Kovacs v. Cooper,* 336 U. S. 77, 82 (1949)."

Applying the common sense doctrine, we find that the instant statute in conjunction with the previous judicial constructions cited was sufficiently definite to inform a man of ordinary intelligence of the nature of activity proscribed. Faced with the

---

1. Section 722:

"Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: 1. Uses offensive, disorderly, threatening, abusive or insulting language, conduct or behavior; 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; 3. Congregates with others on a public street and refuses to move on when ordered by the police; * * *."

present facts and circumstances, it would unduly stretch our credulity to accept the urging that the appellants, after obstructing the sidewalk by sitting and lying down thereon, and refusing to comply with the thrice repeated request by the police, were ignorant of the fact that they were engaged in disorderly conduct of such a nature as legally proscribed.

While it is clear that the protections afforded by the First and Fourteenth Amendments encompass a spectrum of application with regard to freedom of speech that includes the less pure non verbal freedom of speech, *Stromberg v. California,* 283 U. S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931) ; *Carlson v. California,* 310 U. S. 106, 60 S. Ct. 747, 84 L. Ed. 1104 (1940) ; *Brown v. Louisiana,* 383 U. S. 131, 86 S. Ct. 719, 15 L. Ed. 2d 637 (1966), freedom of even the pure forms of speech are by no means absolute. As Mr. Justice Holmes stated in *Schenck v. United States,* 249 U. S. 47, 52, 39 S. Ct. 247, 63 L. Ed. 470 (1919) :

> "[T]he character of every act depends upon the circumstances in which it is done. *Aikens v. Wisconsin,* 195 U. S. 194, 205, 206. The most stringent protection of free speech would not protect man in falsely shouting fire in a theatre and causing a panic."

The controlling principle was enunciated as :

> "The question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger * * *."

In the subsequent case of *Frohwerk v. United States,* 249 U. S. 204, 206, 39 S. Ct. 249, 63 L. Ed. 561 (1919), Mr. Justice Holmes extended the aforenoted statement in *Schenck, supra,* stating "that the First Amendment while prohibiting legislation against free speech as such cannot have been, and obviously was not, intended to give immunity for every possible use of language. *Robertson v. Baldwin,* 165 U. S. 275, 281."

Here, however, we are not confronted with such a pure form of expression as the verbalized or printed word, but by a particular form of conduct and as such the constitutional protection afforded is more limited. We are unaware of any tenet of law

which requires the State law enforcement facilities to stand impotently aside, while disruption and strife reign in the streets in the guise of protected activity, nor is the principle of standing responsible for the product of the force or chain of events that one puts into effect alien to our concept of justice. As Mr. Justice Goldberg stated in *Cox v. Louisiana,* 379 U. S. 536, 555, 85 S. Ct. 453, 13 L. Ed. 2d 471 (1965) :

> "We emphatically reject the notion urged by appellant that the First and Fourteenth Amendments afford the same kind of freedom to those who would communicate ideas by conduct such as patrolling, marching, and picketing on streets and highways, as these amendments afford to those who communicate ideas by pure speech. * * * We reaffirm the statement of the Court in *Giboney v. Empire Storage & Ice Co., supra,* (336 U. S. 490) at 502, that 'it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written or printed.' "

Our interpretation of the cases directed at the subject of free speech evidences to our satisfaction that it is the substance rather than the form of communication to which the protection attaches and such regulation of the form is constitutional where same arises from a legitimate State interest and not for the sole purpose of censoring the underlying thought or idea. See *Brown v. Louisiana, supra,* (383 U. S. 131) ; *Cox v. Louisiana, supra,* (379 U. S. 536) ; *Carlson v. California, supra,* (310 U. S. 106) ; *Thornhill v. Alabama,* 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940) ; *Stromberg v. California, supra,* (283 U. S. 359).

We find the instant statute to be a proper exercise of the police powers of this State directed toward the maintenance of public order.

### III

Appellants' third contention is without merit. The evidence before the trial court clearly established that the arrests and charges resulted from appellants' refusal to cease their obstruc-

tion of the sidewalk and resultant public disturbance and because they had refused to comply with three lawful commands of a police officer. We further note that the standing demonstrators were not arrested. Since the evidence adduced below rejected any substance to the allegation that the arrests were predicated upon suppression of political views, the instructions were properly rejected.

## IV

Appellants' fourth contention is without merit. Appellants contend that the term "appeals" with respect to their trials, improperly informed the jury that they had been convicted in the Municipal Court of Baltimore City.

The record before us clearly establishes that the trial court excluded all papers reflecting the guilty finding below, and replaced them with papers designating them as "Appeals." Based upon the record below, this allegation constitutes a bald allegation devoid of any evidentiary showing of such prejudice.

## V

Appellants' fifth contention also fails. The trial court inquired sufficiently into the areas of general bias or prejudice of the prospective jurors toward the appellants. While rejecting the specific request to inquire on voir dire as to whether or not the jurors had relatives serving in Vietnam, the trial court carefully inquired into whether any preconceived opinions or judgments existed on the jurors' part.

We find that having relatives serving in the Armed Forces an insufficient showing of alleged prejudice to constitute a challenge for cause.

## VI

Appellants' sixth contention is devoid of merit. The matter of allowing the State to reopen its case by presenting another witness is clearly within the discretion of the trial court. *Tingler and Wright v. State,* 1 Md. App. 389, 392, 230 A. 2d 375 (1967). Concerning the apparent violation of the sequestration order, it is clear that even where such a violation exists, this would not of itself require a reversal. "It is within the discretion of the trial judge to determine whether to admit the testimony of the witness where there has been a violation of the ex-

clusion order." *Cunningham v. State,* 247 Md. 404, 417, 231 A. 2d 501 (1967) ; *Mayson v. State,* 238 Md. 283 290, 208 A. 2d 599 (1965). We find no abuse of the trial court's discretion.

### VII

Appellants' final contention is without merit. We find the events which led to the ejection from the Recruiting Station, resulting in the appellants' presence on the sidewalk, constituted a proper and relevant background to the crime charged.

*Judgment affirmed.*