JOHNNY HURLEY *v.* STATE OF MARYLAND

[No. 258, September Term, 1968.]

*Decided March 17, 1969.*

*John T. Bell,* with whom was *Charles W. Bell* on the brief, for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, Jr., State's Attorney for Montgomery County,* and *Earl C. Hill, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

PER CURIAM.

Appellant was found guilty by a jury in the Circuit Court for Montgomery County of robbery with a deadly weapon and was thereafter sentenced by the court to seven years under the jurisdiction of the Department of Correction. His principal contentions on this appeal are that the court committed prejudicial error when it refused to postpone his trial, and when it failed to grant his several motions for a mistrial.

## I

On March 22, 1968 appellant's counsel filed a pretrial motion under Maryland Rule 735, claiming prejudice and requesting that he be tried separately from his jointly-indicted codefendant Kathy Fletcher. At a hearing on the motion, the severance was denied and the joint trial ordered to proceed on April 25. On that date, counsel for both defendants jointly participated in the selection of a jury and both liberally exercised their peremptory challenges until a jury was impaneled. Thereupon, prior to the jury being sworn and outside their presence, codefendant Fletcher's counsel moved for a trial severance on the ground that he had just learned that appellant would give testimony in direct conflict with his client's version of the facts and that, if a severance were not granted, he would be ethically compelled to withdraw from the case. Without objection from appellant or the State, the severance was granted. Over appellant's objection, the State elected to prosecute him first.

Appellant contends that by reason of the last-minute severance granted on his codefendant's motion, he was denied due process of law because he was burdened with a jury chosen, at least in part, by his codefendant's counsel. The record indicates, however, that the only objection interposed on behalf of the appellant was after the severance had been granted, and was in response to the State's choice to prosecute him first. Since the issue now sought to be raised was not preserved for appellate review by proper objection, we decline to review it. Maryland Rule 1085. It nevertheless appears clear that the grant of a severance achieved for appellant what he originally requested.

## II

All witnesses were ordered sequestered at the trial. After counsel for both sides made opening statements to the jury, the prosecuting witness was called to testify and it was then learned that he had remained in the courtroom during the opening statements. Appellant thereupon moved for a mistrial, and contends on this appeal that the trial judge erred in denying his motion.

At the request of a party, the witnesses are to be excluded from the courtroom until called upon to testify. Maryland Rule 753. The essential purpose of the Rule is to prevent one prospec-

tive witness from being taught by hearing another's testimony; its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; it may also avoid the outright manufacture of testimony. See Wigmore, *Evidence,* Volume VI, Section 1838. A review of the trial court's inquiry, as disclosed in the record, indicates that the witness was illiterate and lacking in sophistication, and that his presence in the courtroom was unknown to all parties including the State's Attorney, who expressed his surprise at the witness's presence. Out of the presence of the jury, the prosecuting witness was called to testify concerning his failure to leave the courtroom. He stated that he heard the opening arguments but only part of the defense argument. He revealed that he did not leave the courtroom when the witnesses were excluded because "I didn't know I was supposed to go."

The failure to comply with Rule 753 does not constitute reversible error *per se.* It is within the sound discretion of the trial judge to determine whether to admit the testimony of the witness where there has been a violation of the exclusion order. *Cunningham v. State,* 247 Md. 404; *Mayson v. State,* 238 Md. 283; *Bacheller v. State,* 3 Md. App. 626; *Britton v. State,* 2 Md. App. 285. We find no abuse of that discretion under the facts of this case. We think it clear that the witness did not remain in the courtroom as the result of design—his own or that of anyone else.

Due to the witness's limited intelligence, the prejudicial impact, if any, would appear to be minimal. The grant of a mistrial would have afforded appellant little, if any, relief, since the witness's presence, and whatever knowledge he gained was a *fait accompli,* and could not be cured or erased by resorting to a new trial.[1]

### III

The following testimony was adduced at the trial. George Washington Perdue, the prosecuting witness, testified that at

---

1. Wigmore maintains that the time for sequestration begins only with the delivery of testimony upon the stand, and not before, and ends with the close of testimony. Wigmore, *Evidence,* Volume VI, Section 1840. See *Bulluck v. State,* 219 Md. 67.

about 7:00 p.m. on September 8, 1967, he and his son went to Roy's Tavern in Rockville; that later in the evening "this lady come through asking me if I wanted to go up to an apartment with her," and "I told her yeah"; that he followed her to an apartment above the tavern and they entered one of the inner rooms where "[t]his guy was standing behind [the door] with a club and hit me"; that he looked his assailant in the face and saw that it was the appellant; and that he heard the woman, Kathy Fletcher, say to him, "hand your billfold" and appellant then hit him again and knocked him unconscious. When he awoke he discovered that his wallet, which contained $900, was missing. The police were summoned and as he was waiting for their arrival, he saw appellant run up the stairway to the apartment and then quickly flee. The empty wallet was later recovered on the stairway leading to the apartment.

Grace Osborne, the bartender at Roy's Tavern, testified that Perdue left with the Fletcher woman between 11:30 p.m. and midnight (closing time), and that Perdue returned to the tavern five minutes later. Appellant had departed from the tavern a "few minutes" before Perdue and Kathy Fletcher, and the "other Hurley brothers" departed a "few minutes" before appellant. Perdue's son testified that he left the tavern near closing time and thought that his father was with him. He next saw his father a short time later after he had been beaten and robbed, at which time he saw appellant running from the rear of the building in which Roy's Tavern is located.

Katherine Leccetti, a patron of the tavern that evening and a roomer in the apartment above it, testified that she left the tavern for her room upstairs at approximately closing time. There she saw appellant and Katherine Fletcher dragging Perdue's body through the hallway. Detective Sergeant Charles Percy testified that he responded to a call for assistance at the apartment at about 1:00 a.m.

Appellant testified that he arrived at Roy's Tavern at 9:00 p.m. and that he left between 9:30 p.m. and 10:00 p.m. He denied being in the apartment above the tavern that evening or having any knowledge of the robbery until he was arrested. He maintained that directly after he left Roy's Tavern he went

next door to his uncle's restaurant, where he remained for about an hour, at which time he was taken home by Charles Hurley.

Of the two other witnesses produced by the defense, only the testimony of Charles Hurley sought to corroborate appellant's alibi. Charles Hurley, who claimed that he was appellant's cousin and not his brother, stated that he left Roy's Tavern at 10:30 p.m., went upstairs where he rented a room, and then went next door to the restaurant where he found appellant and drove him home. During the cross-examination of the alibi witness, the State's Attorney asked:

> "Q. Back in March 24, 1965 you were charged with strong armed robbery yourself?"

The appellant objected and moved for a mistrial. Out of the presence of the jury, the following colloquy occurred:

> "THE COURT: Is that a matter of conviction, or merely arrest?
> "MR. HILL: Merely arrest, Your Honor, and there are others on here that are convictions.
> "MR. BELL: Why did he go into the other? Why didn't he do it properly?
> "MR. HILL: I intend to get to it.
> "THE COURT: Very well. Objection be overruled. Also, the motion for a mistrial is denied."

The trial judge then instructed the jury to disregard the question asked to the witness.

Appellant contends that impeachment of a witness's credibility may be by prior convictions that have some tendency to impeach credibility and not merely by prior arrests. He maintains that the question referring to a prior arrest for the same type of crime as that for which appellant was on trial was asked solely for the purpose of degrading the witness in the eyes of the jury. Once the question had been posed, he claims that the credibility of the witness was so maligned that no objection by counsel or instruction to the jury could cure the harm, and the failure of the trial judge to grant his motion for mistrial deprived

him of the effective use of his only alibi witness and thereby irreparably prejudiced him.

The rule in Maryland is that for the purpose of affecting the credibility of a witness it is impermissible to reveal that the witness has been merely accused of or arrested for a crime, but evidence that he has been convicted of a crime having some tendency to show that he is not to be believed under oath may be admissible. See *Cousins v. State,* 230 Md. 2; *Niemoth v. State,* 160 Md. 544, 557; *Woodell v. State,* 2 Md. App. 433; Maryland Code, Article 35, Section 10 (1965 Repl. Vol.). While evidence of an arrest or accusation of a crime is obviously inadmissible, this does not mean that every improper question along these lines is beyond cure by appropriate reproof of the trial court. See *Brooks v. Daley,* 242 Md. 185. The choice of measures designed to protect the fair, unprejudiced operation of the trial is normally left to the trial court, and only in the exceptional case will its choice of measures be rejected. *Nelson v. Seiler,* 154 Md. 63. If withdrawal of the objectionable matter and an instruction to the jury to disregard the matter cannot cure the damage, then, of course, the only remedy is a new trial. See *Duffy v. State,* 151 Md. 456. But the trial court is not required to declare a mistrial for every inadvertent reply given by a witness or after every impermissive question asked by counsel. As we held in *Baldwin v. State,* 5 Md. App. 22, 28, the granting of a mistrial is a matter resting within the discretion of the trial judge—that a mistrial should be granted only where plain and obvious reasons exist, upon the greatest caution and under urgent circumstances; and where the trial court refuses to grant a mistrial, its decision will not be disturbed on appeal without giving full regard to the fact that the trial court is in an advantageous position to judge the question of prejudice, and its decision with reference thereto should not be reversed unless it is clear that there was prejudice. See *Carroll v. State,* 3 Md. App. 50.

Under the facts of this case, we hold that the trial judge's refusal to grant appellant's motion for a mistrial did not constitute reversible error. In so concluding, we have noted that Charles Hurley testified that he left Roy's Tavern before Perdue and Kathy Fletcher; that during that night he did not know

whether or not appellant had been in the upstairs apartment because he (Charles Hurley) remained in the tavern; and that he "just presumed" appellant was sitting in the restaurant next door from the time he (appellant) left the tavern between 9:30 p.m. and 10:00 p.m. and when he took him home at about 10:30 p.m. The testimony of the prosecution witnesses is uniform in placing the time between Perdue's and Kathy Fletcher's departure to Perdue's return after being robbed at from five minutes to something less than one-half hour. Since Charles Hurley testified that appellant was out of his presence and "just presumed" he was in the next door restaurant for more than an hour during the time when the crucial events occurred, it would not appear that his testimony actually corroborated appellant's alibi.

### IV

Finally, appellant contends that the State's Attorney transcended fair comment in his closing argument to the jury when he commented on appellant's failure to produce his parents as witnesses on his behalf to corroborate his alibi. The point was not preserved for appellate review and under Maryland Rule 1085, we decline to review it.

*Judgment affirmed.*