# JOHN LEE McKNIGHT, JR. *v.* STATE OF MARYLAND

[No. 12, September Term, 1976.]

*Decided October 8, 1976.*

Appeal from the Criminal Court of Baltimore (CARDIN, J.).

John Lee McKnight, Jr., was convicted in a jury trial of robbery with a deadly weapon and several lesser offenses and from judgments entered thereon, he appeals.

The cause was submitted on briefs to DAVIDSON, MELVIN and LISS, JJ.

Submitted by *John W. Pfeifer, Assigned Public Defender*, for appellant.

Submitted by *Francis B. Burch, Attorney General, Gilbert Rosenthal, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Richard Cremin, Assistant State's Attorney for Baltimore City*, for appellee.

LISS, J., delivered the opinion of the Court.

Appellant, John Lee McKnight, Jr., was charged in a series of four criminal informations with robbery with a deadly weapon and several lesser included offenses, the crimes allegedly having occurred on four separate dates within a one month period and involving four different victims. Before trial, appellant filed a motion for separate trials, contending that his defense would be prejudiced if the alleged offenses were joined and he was forced to trial on all four informations at the same time. Chief Judge Dulany Foster heard and denied the motion. Appellant was tried by a jury before Judge Meyer Cardin in the Criminal Court of Baltimore; he convicted of three counts of robbery, one count of armed robbery, and one count of assault. After denying a motion for a new trial, Judge Cardin imposed sentences, and it is from these judgments that this appeal was filed.

Appellant alleges five grounds which he contends individually and collectively amounted to reversible error. We do not agree and shall affirm. We shall discuss the

alleged grounds seriatim as they are here stated in appellant's brief:

I. The court abused its discretion in denying the motion to sever the informations due to the resultant prejudice to the accused;

II. The court abused its discretion in denying requested in-court identification procedures away from the trial table;

III. The court erred in denying the motion for dismissal and/or motion for continuance upon the amendment of Criminal Information No. 67500340;

IV. The court abused its discretion in refusing one of appellant's witnesses from testifying after having violated the sequestration rule; and

V. The court abused its discretion in allowing rebuttal evidence beyond the scope of the case in chief, and highly prejudicial in nature.

## I.

Maryland Rule 734 provides that the court "may order two or more indictments tried together if the offenses and the defendants, if there be more than one, could have been found in a single indictment."

Maryland Rule 735 provides:

> "If it appears that an accused or the State will be prejudiced by a joinder of offenses, or of defendants in an indictment or by joinder for trial together, the court may order an election or separate trials of counts, grant separate trials of defendants or provide such other relief justice requires."

At the hearing before Chief Judge Foster, appellant argued that each criminal information charged "a separate occurrence on different days involving different witnesses on both the State's and the appellant's side." He also urged that to have all four informations tried at the same time would tend to inflame the jury. We must consider 1)

whether it was error to deny appellant's motion for separate trials and 2) if it was, whether that error was prejudicial.

In *Sutton v. State,* 25 Md. App. 309, 313, 334 A. 2d 126 (1975), this Court stated the general rule as to severance:

> "One of the factors to be considered in the trial judge's determination of whether to grant a severance is the saving of the time and the expense that unnecessary separate trials would entail. Moreover, the decision as to whether to order separate trials is vested in the sound discretion of the trial judge. If it appears that the facts to be proved in one case are substantially the same as those in the other or that they are so closely related that the evidence necessary to show one crime is intertwined with the other, there is no reason to order a severance unless the joinder is prejudicial." (citations omitted)

In *Sutton,* one of the two indictments joined for trial charged the defendant with homicide and was returned in December of 1973, while the other indictment charged an assault on a different victim and was not filed until some four months later. The Court held there was no prejudice to appellant and concluded that the trial judge properly denied the severance motion. A similar contention was raised in *Baumgartner v. State,* 21 Md. App. 251, 255, 319 A. 2d 592, 595 (1974); and this Court held that the appellant "errs in contending that the court must require separate trials or elect among counts where the accusations do not arise from the same transaction," [1] and that "[i]t is also not necessary that all the offenses charged be committed against the same

---

1. *See Simmons v. State,* 165 Md. 155, 167 A. 60 (1933), where the Court approved the joinder of 18 counts charging the defendant with larceny or obtaining funds by false pretenses from a bank, the transactions extending over a nine month period. At page 165, the Court held: "So, the prevailing practice is that not only counts for misdemeanors may be joined, but, also, counts for several felonies, and, likewise, counts for felony and misdemeanor, subject to the qualification that, generally, the different counts present different aspects of the evidence of the same offense or, if not of the same offense, the offenses charged are of the same general nature and permit the same mode of trial."

victim." *See Jennings v. State,* 8 Md. App. 312, 259 A. 2d 543 (1969).

Where the record discloses, as our own review of this one does, that the offenses charged are of the same general nature and formed part of a general scheme of unlawful conduct, the refusal to grant separate trials is not prejudicial. As the State pointed out at the hearing on appellant's motion for a new trial, three of the four victims were gentlemen in their late fifties and sixties, all four of the victims lived in the same neighborhood as the defendant, three of the four victims knew the defendant by face prior to the occurrences, and the *modus operandi* of the assailant was strikingly similar: in three of the four cases, the victim was yoked, and in three of the four crimes the assailant ripped the victim's pocket in an attempt to get the money.

Appellant relies principally on *Bell v. United States,* 332 A. 2d 351 (D.C. 1975), in which case the District of Columbia Court of Appeals held that the accused is entitled to a severance where: 1) the jury may cumulate evidence of separate crimes to find guilt or 2) where the jury may improperly infer a criminal disposition and treat inference as evidence of guilt. But the Court held further on, at 353-354:

> "In this case evidence of the two offenses would not be mutually admissible at separate trials; however, the evidence as to each crime charged was sufficiently simple and distinct to meet the test of *Drew v. United States, supra* at 17-18, 331 F. 2d at 91-92, that: [I]f, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that . . . the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. If, however, it appears at any later stage in the trial . . . that there is a possibility that the jury will become or has

become confused, then, upon proper motion, the trial judge should order severance."

In the instant case the motion for severance having been denied, appellant requested that a special instruction be given prior to trial in which the jury was to be advised that since there were four different alleged offenses charged "they should remember to keep each one separate and not let the evidence as adduced to any one occurrence affect their judgment as to any other occurrence." The trial court complied and gave the following instruction before the testimony began:

> "THE COURT: Ladies and gentlemen of the jury, this trial involves four separate alleged offenses allegedly committed by the Defendant on four separate days, and you are not to consider the evidence relating to one of these occurrences as having any relevance or bearing on any other alleged occurrence. The Defendant is entitled to be judged separately on each of these separate occurrences."

In addition, the trial court wisely repeated its cautionary admonition to the jury at the conclusion of the trial, to wit:

> "Now, this trial, as I indicated earlier, involved four separate and alleged offenses committed by the Defendant on four separate days, and you are instructed not to consider the evidence relating to any one of the cases as having any relevance or bearing on any other alleged crime, and that the Defendant is entitled to be judged separately on each of the separate criminal informations."

Although the evidence of guilt in each individual crime charged here would not be mutually admissible at separate trials (since the evidence in any one case would not directly show guilt in any other case, *See Wood v. State*, 191 Md. 658, 62 A. 2d 576 (1948); *Jennings, supra*), we believe that the similarity of circumstances and of the conduct of the

appellant in the perpetration of the crimes permitted the joint trial of the four cases.

From our own review of the record, we are satisfied beyond any reasonable doubt that the facts as presented by the State were "sufficiently simple and distinct" to allow the jury to relate easily the facts of each case to the particular offense with which appellant was charged.

We find no abuse of the trial court's discretion in denying severance of the cases and no evidence of prejudice to the appellant arising from this denial.

## II.

Appellant next urges that the trial court abused its discretion in denying his request to be seated in the audience for the in-court identification. He contends that in order to insure due process it is incumbent on the State to produce evidence of a reliable and untainted identification prior to trial, or that the court, where no such evidence is forthcoming, insure the defendant a fair and impartial in-court identification free from the suggestive effect of the defendant's being seated at the trial table next to defense counsel. We know of no such duty on the part of either the State or the court, and appellant cites no authority to support his position.

This Court has held that an accused has no constitutional right to be placed in a lineup. *Bowen v. State*, 5 Md. App. 713, 249 A. 2d 499 (1969). It has also held that the conduct and direction of a trial is always within the sound discretion of the presiding judge. *Cummings v. State*, 7 Md. App. 687, 256 A. 2d 894 (1969). In *Alston v. State*, 11 Md. App. 624, 629, 276 A. 2d 225, 228 (1971), this Court considered a similar request. The Court at 629-630 said:

> "Although such practices as seating an accused in the audience at his trial for purposes of identification are widely used, and approved, the propriety, however, of various in-court identification techniques are still tied to the rule that the overall conduct of a trial is subject to the

sound discretion of the trial judge. Moreover, this Court will not interfere with that discretion unless the trial judge clearly abuses it and, as a result, the accused is prejudiced. *Turner v. State,* 7 Md. App. 74." [2]

In denying appellant's motion, the trial court called attention to the fact that there were only two or three other individuals in the courtroom at the time of trial and that they were individuals closely resembling the defendant and were apparently brought there for the purpose of misleading the jury. Under questioning, defense counsel admitted having requested their presence "to see if the complaining witness could identify the defendant if he was not seated at the counsel's table."

We hold that the trial court did not abuse its discretion and acted fully within its judicial prerogative in not permitting the in-court identification to become a game of judicial Russian roulette. *See White v. State,* 23 Md. App. 151, 158, 326 A. 2d 219 (1974).

### III.

Appellant contends that the trial court erred in denying the motion for dismissal and/or continuance which he made when during the course of the trial it developed — through the testimony of one of the alleged victims — that the date of the offense against Mr. Smith was actually December 2, 1974, rather than December 1, 1974, as charged in the criminal information. The court permitted the State to amend the information to reflect the correct date.

Rule 714 a., Maryland Rules of Procedure provides that, "The court may permit an indictment or information to be amended at any time before verdict as to matter of form, but not as to matter of substance."

The case law governing the granting of amendments of form is that an indictment or information may be corrected

---

2. *See* Soles v. State, 16 Md. App. 656, 299 A. 2d 502; Witcher v. State, 17 Md. App. 426, 302 A. 2d 701 (1973).

provided the amendment does not alter any of the essential elements of the offense and results in no prejudice to the rights of the defendant. *Corbin v. State*, 237 Md. 486, 206 A. 2d 809 (1967); *Watkins v. State*, 4 Md. App. 47, 240 A. 2d 787 (1968).

Appellant contends that the denial of his motion and the permission granted the State to amend the information was prejudicial to his ability to prepare his defense, pointing out that the defense was barred from finding witnesses to attest to the defendant's location on the date in question. The record discloses, however, that defendant and his counsel were in possession of the police offense report which clearly stated the date of the offense to be December 2, 1974. In addition, when the defendant testified on the second day of trial as to his activities on December 2, 1974, he claimed to have been at home all day; and a number of witnesses were called by the defense to substantiate his statement. Appellant made no proffer of any additional witnesses to verify his alibi, and no request was made for any additional witnesses.

We find that the court did not commit prejudicial error in denying appellant's motion for dismissal and/or continuance upon the amendment of Criminal Information No. 67500340.

## IV.

Appellant next argues that the trial court abused its discretion in refusing to permit a defense witness to testify after having violated the sequestration rule, imposed by the court at the request of the defense and the State.

Maryland Rule 753 provides, in part: "The court may upon its own motion and shall, upon the request of a party, order that the witnesses be excluded from the courtroom until called upon to testify." The Court, in *Hurley v. State*, 6 Md. App. 348, 251 A. 2d 241 (1969), stated the essential purpose of the Rule: 1) to prevent a prospective witness from being taught by hearing another's testimony; 2) its application avoids an artificial harmony of testimony that prevents the trier of fact from truly weighing all the testimony; and 3) it may also avoid the outright manufacture of testimony.

The issue — of the effect of a witness's violation of a sequestration order — was first considered by our Court of Appeals in *Parker v. State*, 67 Md. 329, 10 A. 219 (1887), the facts in that case being similar to the facts here: At the beginning of a trial of a defendant charged with rape, the court ordered that the witnesses on both sides be excluded from the courtroom. In disobedience of the court's order, a material and competent witness for the accused remained in the courtroom during the examination of the other witnesses. When the errant witness was called on behalf of the defense, the trial court refused to permit her to testify. On appeal, Judge Bryan, speaking on behalf of the Court, delivered an opinion which had the ring of a civil libertarian's declaration. At 331-332, he said:

> "It was in the discretion of the Court to order the witnesses to leave the Court room; but it is not reasonable to take away from a prisoner on trial the benefit of testimony on which his life may depend, because of the misconduct of another person.
>
> "... Since such great care has been taken to secure the right of an accused person to prove the truth relating to the accusation against him, it would be very strange, if he should forfeit this most precious privilege by the misbehaviour of a witness. Authorities were cited at the bar for the purpose of showing that in some jurisdictions it was within the discretion of the Judge to refuse to permit a witness to testify under the circumstances stated .... If the evidence of such witness would show the innocence of a prisoner on trial for his life, then the discretion of the Judge to admit or reject the testimony amounts to a discretion to take the prisoner's life, or to spare it."

The ruling of the trial court was reversed and a new trial granted.

Shortly after the decision in *Parker*, the Supreme Court of the United States had before it a similar question; and in

*Holder v. United States*, 150 U. S. 91, 92 (1893), Chief Justice Fuller said:

> "If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under *particular circumstances* may be supported as within the sound discretion of the trial court." (citations omitted; emphasis supplied).

In *Robinson v. State*, 340 F. Supp., 82, 85 (D. Tenn. 1972), *aff'd.*, 474 F. 2d 1273 (6th Cir. 1973), *cert. denied*, 414 U. S. 848 (1973), the Court held:

> "[T]hat it was error for the trial court to disqualify a witness merely because of his disobedience to a rule requiring sequestration and in the absence of some showing of particular circumstances indicating that the witness remained in court with the consent, connivance, procurement or knowledge of the party seeking to use the witness or of his attorney."

The effect of a witness's violation of an order of exclusion is discussed thoroughly at 14 A.L.R.3d 16. From the cases there analyzed, it is clear that the trial court may exercise its sound discretion in determining whether the testimony of the offending witness should be admitted. Maryland has adhered to this concept and enunciated it in *Cunningham v. State*, 247 Md. 404, 231 A. 2d 501 (1967); *Mayson v. State*, 238 Md. 283, 208 A. 2d 599 (1965); *Jones v. State*, 11 Md. App. 468, 275 A. 2d 508 (1971); *Hill v. State*, 9 Md. App. 65, 262 A. 2d 573 (1970); *Hurley v. State, supra; Bacheller v. State*, 3 Md. App. 626, 240 A. 2d 623 (1968); and *Britton v. State*, 2 Md. App. 285, 234 A. 2d 274 (1967).

In its discussion of the disqualification of a witness as a consequence of disobeying a sequestration order, 6 J.

Wigmore, Evidence, § 1842 (Chadbourn rev. 1976), at 477, says:

> "If the order of exclusion is knowingly disobeyed, the court unquestionably has the power to refuse to admit the disobedient person to testify; and it ought to exercise this power, in its discretion, whenever there appears any reason that the proposed testimony was important, that the witness had heard the other testimony, and that he wished to know its tenor."

Wigmore calls attention to the differences in judicial opinion in the instance of wilful disobedience by a witness without the connivance of a party to the action, but even in these instances, he suggests that the great majority of courts hold that the disqualification of the witness is within the sound discretion of the trial court. J. Wigmore, at 484.

In the light of the legal principles we have enunciated, it becomes our duty to examine the factual posture of this case to determine whether the ruling of the trial court was exercised within the permissible limits of sound discretion. Our review of the record discloses that appellant's trial continued over a period of three days and that at the request of both the State and defense, all witnesses were sequestered. Before the beginning of each session, the witnesses were ordered to leave the courtroom, after which counsel for both sides indicated their satisfaction that all witnesses were sequestered. On the last morning of the trial, counsel for appellant advised the court that his final witness was one Irving Peay and requested the court's assistance in securing his attendance at the afternoon session. Peay appeared at the afternoon session and testified as an alibi witness. At that point, the witness, Guy Christian, was called for the defense; and the following colloquy ensued between the witness, defense counsel, and the court:

"Q. [The Court] Mr. Christian, were you in the courtroom during the trial of this case?

A. Yes, sir.

Q. Weren't you informed that you were not permitted to be in the courtroom?

A. No.

Q. Your attorney didn't tell you this?

A. Yes, sir.

Q. Why did you stay in the courtroom?

A. I forgot.

Q. You were also here this morning?

A. Yes, sir.

THE COURT: You are going to be excused, you are not going to testify. Counsel informed the Court this morning that he was not calling Mr. Christian and counsel informed the Court that he was not calling this witness, and secondly, that counsel for the Defendant requested that all witnesses be sequestered at his request, and at his request all witnesses were sequestered. The witness during the course of the proceedings was in the courtroom listening to the proceedings, and, therefore, this Court will not permit this witness to testify.

MR. AZRAEL: Your Honor, first of all, I had no idea the man was in the courtroom. I certainly didn't instruct him to come in to hear any testimony. I want the record to reflect that. Secondly, I think some inquiry should be made as to what testimony the man heard and whether or not that is going to be a disqualification for a witness because there have been some cases where some witnesses have been in the courtroom.

THE COURT: All we are interested in is in this jurisdiction, and in the opinion of this Court in view of the fact that counsel is responsible for sequestration of the witnesses and because counsel indicated earlier today that he was not going to call this witness, the Court will sustain the objection of counsel.

MR. AZRAEL: We accept (sic) to the ruling, Your Honor."

The record reveals that the witness had been in court at least throughout the morning session, during which time the appellant and a series of alibi witnesses testified in the appellant's behalf. Christian had been summoned as a witness for the defense; counsel for the defense had specifically informed the court that morning that Christian would not be called. It was apparently obvious to the court that the witness had been seated in the courtroom the entire day. No explanation is given for the failure of the appellant or his counsel to detect his presence. It is further noteworthy that defense counsel made no proffer as to what the testimony of the witness would have been had he been allowed to testify. If he was another alibi witness, his testimony would have been merely cumulative. If he had substantive information concerning the charges against the appellant, counsel should have proffered to the trial court what that evidence would have been so that we would have it before us on review. Under all the circumstances, however, to hold that the trial court abused its discretion in refusing to allow Christian to testify would make the sequestration rule a nullity.

We hold that the court acted within the limits of its sound discretion.

### V.

Finally, appellant contends that the trial court abused its discretion by permitting the State to introduce rebuttal evidence which should have been offered, if at all, in the State's case-in-chief.

The general rule as to when rebuttal evidence may be offered was laid down by the Maryland Court of Appeals in *Mayson v. State, supra*:

> "Ordinarily, an orderly conducted criminal trial anticipates the State adducing all of its evidence in chief and resting its case. The defense follows by producing its evidence tending to establish the accused's non-culpability, which includes the contradiction or rebuttal of the evidence offered by

the State. Then the State is afforded an opportunity to produce its rebuttal evidence."

*Mayson* defined rebuttal evidence as any competent evidence which explains — or is a direct reply to or a contradiction of — any new matter that has been brought into the case by the defense.

This Court recently had before it the companion cases of *Hepple v. State* and *Jones v. State*, 31 Md. App. 525, 358 A. 2d 283 (1976), cert. granted September 15, 1976, in which Chief Judge Orth,[3] in reviewing the law on the admissibility of rebuttal evidence stated that the initial decision as to the admissibility of such evidence rests within the sound discretion of the trial court. An appellate court will reverse only, 1) if it finds the admission of the evidence to be manifest error and 2) if upon its own independent review of the record, the Court is unable to declare its belief, beyond a reasonable doubt, that the admission of the evidence in no way influenced the verdict.

Our review of the record convinces us that there was no manifest error in the admission of the disputed testimony as rebuttal: Before the rebuttal witness was called, the State proffered that the witness would contradict the defendant's testimony that he had been arrested on the evening of December 3rd, after having left a theater and gone home. Counsel's objection was addressed primarily to the circumstances of the arrest rather than to the rebuttal testimony. Mr. Azrael said:

> "I think the damaging part of it is that the Defendant was hiding in a closet when he was arrested. I don't think that is relating to anything material in the case, it's highly prejudicial. If they want to say he was arrested on the 4th, all right, but to go into all this, I would say the Defense would have to object."

The court permitted the rebuttal witness, a police officer, to be called, and he did in fact contradict the appellant's

---

3. since appointed to the Court of Appeals of Maryland.

version of the date, time, and place of the arrest; he testified that the arrest occurred at 430 East Lafayette Avenue during the daylight hours of December 4, 1974. At the conclusion of the officer's testimony, appellant was recalled to the stand by his counsel and explained that he was hiding in the closet "because of my previous record and I thought he was going to lock me up for something I ain't did."

We have carefully reviewed the record and find no abuse of the trial court's discretion in allowing the rebuttal evidence.

*Judgments affirmed.*