THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. GEORGE ELLIOTT, PLAINTIFF IN ERROR.

Argued October 6, 1942—Decided October 30, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the plaintiff in error, *Harold Simandl.*

For the state, *Frank G. Schlosser,* Assistant Prosecutor of the Pleas (*Daniel T. O'Regan,* Prosecutor, and *Raymond G. Otis,* Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

PARKER, J. This writ of error brings up the conviction of plaintiff in error of maintaining a "disorderly house." The indictment is in the usual common form, substantially that given in *Bishop's "Directions and Forms,"* § 795, and considered in *State* v. *Berman,* 120 *N. J. L.* 381. See, also, 2 *Chit. Crim. L.* *40.

The matter is before us both on strict writ of error and on certificate of the entire trial record pursuant to *R. S.* 2:195-16, formerly section 136 of the Criminal Procedure Act, *Comp. Stat., p.* 1863. The assignments of error and "causes for reversal" are identical and are twenty-seven in number. Of these, the following are not argued and are therefore disregarded: Nos. 1 to 10, inclusive: 16 and 17: and 25.

The first point made for reversal rests on Nos. 18 to 23, inclusive, all relating to passages in the charge. These passages consist of a recital by the court of certain statutory language, and a reading of some of the regulations promulgated by the Commissioner of Alcoholic Beverage Control under the authority of the statute: in connection with which the court pointed out certain testimony tending to show violations of those regulations, and left it to the jury to say whether the evidence satisfied them of the fact of violation. We fail to discern any error here. It is not suggested that the regulations did not have the force of law. *Franklin Stores Co.* v. *Burnett,* 120 *N. J. L.* 596; *Gaine* v. *Burnett,* 122 *Id.* 39. It is argued that there was error in charging that violations of certain specific regulations under the Alcoholic Beverage Control Act might be considered in deciding whether the defendant was guilty under the indictment: but we find that each and every of those violations pointed to conduct falling under the head of "drinking, tippling, whoring and misbehaving themselves" or directly connected therewith, and was entirely competent in that aspect.

The next point, the discussion of which covers over twenty-five pages of the brief for plaintiff in error, relates to the comment by the court on the fact that defendant had not called as witnesses his two bartenders, and instructing the jury on the authority of *State* v. *Callahan,* 76 *N. J. L.* 426 (which the court cited to the jury), that "failure to produce a witness presumptively able to explain the circumstances which constitute a *prima facie* case against the accused, while not presumptive of guilt, may be considered by the jury against him."

A recital of the testimony supporting the indictment is needless. Suffice it to say that the state presented ample evidence of a "disorderly house" and concededly the defendant was its proprietor. Indeed, there is no assignment of error as permitted by the statute, that the verdict was against the weight of evidence. So, on the authority of the Callahan case, the failure of defendant to call these bartenders, who were of course present while the place was open for business, part or all of the time, "may be considered by the jury in weighing the effect of evidence applicable to the matter in dispute but it does not raise any presumption of guilt or innocence." (We reproduce the language of the syllabus.)

The attack on the quoted sentence of the charge seems to be based, not on its precise language, but on the fact, stipulated in this court, after the writ of error, that the two bartenders were present at the trial, under subpœna by the state, and naturally could have been called as witnesses by the prosecutor: *ergo,* it is argued, the rule in the Callahan case was inapplicable. But the argument seems to proceed on the theory of a presumption of guilt on the one hand, and of innocence on the other. That presumption was expressly excluded in the Callahan case, and by the trial judge in the case at bar. What the jury were entitled to infer from the state's failure to call these bartenders, if anything, was that they would not testify favorably to the state; and by the same token, from defendant's failure to call them, that they would not testify favorably to him. There was apparently no request for the former instruction, and hence no error in omitting it. As to the instruction that is challenged, it is to be borne in mind that these two men had been servants of defendant in his place of business, and, if he was conducting a disorderly house, conceivably aiders and abettors therein, and themselves liable to prosecution and punishment. Obviously, if defendant was innocent they were important witnesses for him. Cases are cited from other jurisdictions, but for the most part they turn on presumptions of guilt or innocence and not on presumptions as to how they would testify: a very different matter, as has already been pointed out.

The next point asserts error in an instruction which as quoted in the assignment and specification reads as follows: "It is sufficient if the state has proved one act or violation to your satisfaction beyond a reasonable doubt."

The difficulty on this point is that the sentence is separated from its introductory context, which is here reproduced: "It has been repeatedly held that any place of public resort is a public nuisance where illegal practices are habitually carried on or when such place becomes the habitual resort of thieves, drunkards, prostitutes and so forth, who gather there for an unlawful purpose, or make it a rendezvous where plans may be concocted for depredations upon society and disturbing either its peace or its right or property.

"So that it was not necessary to prove all of these *elements*. One was sufficient. In other words, what I want to point out to you gentlemen is this: That while you will have the indictment and you will take the indictment in with you into the sanctity of the jury room, it is not necessary that every allegation contained in the indictment must be proved beyond a reasonable doubt. It is. sufficient if the state has proved one act or one violation to your satisfaction beyond a reasonable doubt."

The word "act" was of course not a happy one, but clearly the jury could not have been misled by it. "Disorderly house" connotes *habitual* violation of law in one or more particulars, as the court in fact charged, adding "that no single violation constitutes a [the] crime." We are clear that the jury could not have been misled by this merely verbal inaccuracy.

The next point alleges error in admitting in evidence, over objection, a written statement of Helen De Werth, one of the witnesses, for the purpose of "neutralizing" certain adverse testimony that she had given when called as a state's witness. The propriety of this is entirely settled in this state by a line of cases beginning with *State* v. *D'Adame,* 84 *N. J. L.* 386, consistently followed in later decisions. The court was careful to instruct the jury to keep the evidential effect of the paper within its proper limits. Moreover, no ground of objection was stated.

The next point alleges error in overruling a question on cross-examination to Kathleen Spencer, a state's witness. We can discern no error, for several reasons: first and principally, the question was interrupted and never completed, and it is impossible to say whether it was relevant and competent. Secondly, the objection was sustained only conditionally and counsel seems to have assented to the condition. Thirdly, there was no exception. Of course exceptions are not required on a certificate of the entire record, but the failure to pray one is at least significant.

The same may be said of the exclusion of two questions on cross-examination of the state's witness Antoinette Ross. The questions were obviously intended to raise an inference that the witness was controlled in some way by the prosecutor. The court ruled that unless this was the object, the questions were irrelevant, as indeed they were. Counsel then disclaimed any such intent, and the cross-examination proceeded on other lines. No exception was prayed: and there is no specific argument of this point, but only a general reference to a previous point in which it was in fact argued or intimated that the witness was intimidated. Naturally the disclaimer nullifies the argument.

A similar cause for reversal relates to the cross-examination of Patrick Flanagan, called to prove a statement by Helen De Werth. The judge ruled as he had ruled in the Ross examination. The colloquy in that examination fully supports the ruling in that of Flanagan.

The judgment will be affirmed.