# WILLIAM DEAN CHRISTENSEN *v.* STATE OF MARYLAND

[No. 788, September Term, 1973.]

*Decided May 28, 1974.*

The cause was argued before MORTON and LOWE, JJ., and J. WILLIAM HINKEL, Associate Judge of the District Court of Maryland for District 8, specially assigned.

*Albert D. Brault* for appellant.

*Harry A. E. Taylor, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *Frank H. Santoro, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In 1722 a chimney-sweeper's boy found a jewel and took it to a jeweler for appraisal. The jeweler, having declined to return it to the boy, was sued in trover. Instructing the jury how they should arrive at the value of the unreturned jewel, ". . . the Chief Justice directed the jury that unless the defendant did produce the jewel and show it not to be of the finest water, they should presume the strongest against him, and make the value of the best jewels the measure of their damages; which they accordingly did." *Armory v. Delamirie,* 1 Strange 505. From this practical application of simple logic to the rules of fair play, we have evolved the missing evidence, or missing witness rule, as the case may be. That rule broadly stated holds that "The failure to bring before the tribunal some circumstance, document, or witness, when either the party himself or his opponent claims that the facts would thereby be elucidated, serves to indicate, as the most rational inference, that the party fears to do so, and this fear is some evidence that the circumstance or document or witness, if brought, would have exposed facts unfavorable to the party." 2 Wigmore, *Evidence,* § 285 (3rd Ed. 1940).

The missing witness aspect of this rule, with which we are

singularly preoccupied here, has been applied in criminal cases by the overwhelming weight of authority. See 2 Wigmore, *supra*, § 289; *United States v. Welp*, 446 F. 2d 867; *United States v. Beekman*, 155 F. 2d 580; *United States v. Walker Co.*, 152 F. 2d 612; *State v. Hassard*, 365 P. 2d 202; *State v. Elliott*, 28 A. 2d 597; *Anderson v. Commonwealth*, 156 S.W.2d 860; Annot., 5 A.L.R.2d 893. There is a dearth of authority concerning the rule's applicability in criminal cases in Maryland. When recognized at all, this issue usually receives only a peripheral glance. See, *e.g.*, *Nelson v. State*, 5 Md. App. 109. In the jurisdictions where the missing witness rule has been applied more frequently, one of several conditions precedent to the raising of the unfavorable inference is that the witness be accessible to the person against whom the inference is sought.[1] Wigmore, *supra*, § 286 notes that one of these conditions mentioned or assumed in "almost all cases" is that the person ". . . must be *within the power* of the party to produce. This is unquestioned." The Supreme Court in 1893 articulated the rule along with Wigmore's basic condition even more restrictively. The witness must not only be accessible to the party but peculiarly so:

> "The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U. S. 118, 121.

The Court of Appeals for the District of Columbia in *Conyers v. United States*, 237 A. 2d 838, citing *Pennewell v. United States*, 353 F. 2d 870, went even further:

> "The corollary proposition that no presumption arises from the failure of one party to call a witness

---

1. By mentioning this basic condition to the rule's availability, we do not preclude the possible application of other conditions under appropriate circumstances.

if that witness is equally available to both parties is well established in this jurisdiction."

The case before us was heard by a jury in the Montgomery County Circuit Court, presided over by Judge Ralph G. Shure. The Appellant was convicted of attempted rape primarily upon the testimony of the prosecuting witness together with circumstantial evidence. Appellant's defense was that after he picked up the witness who was seeking a ride from Georgetown to her home in Richmond, Virginia, she became quite responsive to his advances.

Although the prosecuting witness left the Appellant's car at one time during the evening, she was picked up again a little later while hitchhiking. Appellant claims she made implied offers of sexual favors to Appellant and a friend accompanying him, in exchange for a ride to Richmond. Both Appellant and the prosecuting witness spoke of the third occupant of the automobile who was present throughout the entire episode.

Throughout his case, Appellant meticulously avoided direct reference to, or identification of, the obviously absent potential witness. On the other hand, the Assistant State's Attorney continuously raised the spectre of his absence by repeatedly and over prolonged periods questioning Appellant about his associate. The State not only asked who he was, but where he lived, and what efforts Appellant or his attorney had made to find him and produce him at trial. Appellant pointed out that he had been incarcerated for all but approximately one month before trial and that he had no way of knowing what his attorney's efforts had been. He acknowledged that his own efforts had been minimal during the period he was not in jail prior to trial.

After all testimony had been taken and each side had closed its case, counsel and court conferred upon proposed instructions. Counsel for Appellant requested and was denied an instruction that no inference be permitted from the absence of the witness.

"MR. BRAULT: Your Honor, the State has gone to great length about the fact that this Jessie Paine

was not produced by the defense, and I can tell Your Honor that I don't think it necessary and it is not my practice to take the stand myself or to ask any of my associate counsel to take the stand, but we were unable to find this man.

I am not saying that we can do it with the precise dedication or ability that the police can.

I don't have it at my command, seven hundred and fifty trained investigative personnel, like the State's attorney, but with what means are available in my office, we did check.

I can tell the Court what we found out if the Court wants to know, but we were unable to find him, but I don't think it is our duty to produce him, and I would like the Court to instruct the jury there is no duty on the defendant to produce that witness and no inference is to be drawn from the fact that he wasn't produced."

The court properly responded that "They [the jurors] are entitled to draw an inference from the absent witness."

The decision of Appellant's counsel not to testify or provide testimony was one of many judgment calls trial counsel are compelled to make throughout a trial. It was undoubtedly made more difficult by the reluctance of Maryland courts to sanction counsel's serving as a substantive witness. See, *e.g., Parlett Ford, Inc. v. Sosslau,* 19 Md. App. 320, 329. Notwithstanding ". . . the practice is looked on with disfavor," an exception is permitted "in unusual circumstances." *Bris Realty v. Phoenix,* 238 Md. 84, 90. In *Snyder v. Hammer,* 180 Md. 690 (reported in full in 23 A. 2d 653, 655), an exception is recognized ". . . when the need of so doing has not been forseen." The Code of Professional Responsibility, a part of the Maryland Rules, Md. Rule 1230, states:

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall

withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify .... [a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." DR 5-102 (A), 5-101 B (4).

A substantial amount of time was consumed by the State in cross-examining Appellant as to his efforts and his counsel's efforts to locate the missing witness. Consequently, Appellant's counsel had to decide whether or not to testify or permit an associate to testify as to the diligent efforts they had used to attempt to locate Jesse Paine. That decision was necessarily his own and the onus of its result could not be passed to the trial judge by sharing with him, in camera, a detailed account of those efforts. This he attempted to do, however, by reciting the efforts to the judge on the record, out of the hearing of the jury.

"MR. BRAULT: I can see this is going to get into some sort of a problem, but we learned through inquiry from Mr. Christensen's former wife, he told us at the jail she might know where he was, because we found no listing on Lawrence Avenue for anybody that would answer this name,. and she told us the last she had known of the man he was working at a store she thought as stock clerk in the Congressional Plaza area.

We are familiar with that area. So we went through store by store and telephoned all the stores we could remember that answered the description.

We finally learned that the man answering that name had, in fact, been employed as a stock clerk at a place called Dockside.

Dockside is a store down by Congressional Plaza. So our information was correct.

However, he was no longer there. The payroll clerk didn't have any idea of his present address.

They couldn't tell us where he was or where he was working.

They did, however, tell us at that time he was living at the Courthouse Square Apartments, which is, of course, not on Lawrence Avenue; as Your Honor knows, that is on Rockville Pike near Rockville.

So we contacted the rental agency at the Courthouse Square Apartments, and they had no listing for a man of that name.

We also learned that he may have gone by the name Step. We used the name Step wherever we made inquiry. We didn't find him there either.

I dispatched a law clerk, an intern from the American University, and he went over there and read mailboxes at Courthouse Square, to see if it might be on the mailbox, albeit it is not listed, and the results were negative.

These are the efforts we made. We could not find him, and I don't know what the man would have said. He is not peculiarly within our control.

He was not readily in my control, and Mr. Christensen has been incarcerated since August 21st."

Notwithstanding the diligence shown by these pretrial efforts, the judge persisted in declining to bar the drawing of an unfavorable inference by the jury *from the evidence before it*. We note, that he also declined to instruct affirmatively that an unfavorable inference could be drawn. "When . . . an instruction is sought which in a sense creates evidence from the absence of evidence, the court is entitled to reserve to itself the right to reach a judgment as wisely as can be done in all circumstances, even when the general guidelines based upon *Graves* are found to be supported by the evidence." *Burgess v. United States*, 440 F. 2d 226, 234. Under the circumstances his decision was circumspect.

There was ample evidence that a third party was present throughout the encounter. His name was Jesse Paine, a friend and neighbor of Appellant who personally made no "serious effort" to assure his presence at the trial and who did not know what efforts his attorney had made. Judge Shure could not properly preclude the jury from inferring that the missing testimony might have been of no help to the accused. Cf. *United States v. DiRe*, 332 U. S. 581, 593. To do so would negate the very purpose jurors serve, *i.e.*, to use their own judgment in evaluating the evidence or lack of evidence before them. They would be left with the irrational alternative of totally ignoring the admitted presence of the witness, whom both sides testified had been present throughout the episode, or finding that his testimony would have been favorable had it been available. To so instruct would not only unwarrantedly intrude into jury prerogatives, but would fly in the face of the permissible inference recognized by the Supreme Court and two and a half centuries of case law as well.

Just as obviously the judge could not pass on to the jury that which had been entrusted to him in camera without benefit of oath or test by cross-examination. We neither condemn nor condone the declination of Appellant's counsel to testify under the circumstances but he cannot now place the onus of responsibility upon the trial judge. If the trial judge erred in refusing to instruct upon the missing witness rule, his error was to Appellant's advantage, certainly not to his prejudice.

Appellant next objects to the comments upon the missing witness made by the Assistant State's Attorney during his closing argument. Appellant questions whether the Court erred in allowing "the State's Attorney to comment unfavorably upon the absence of a defense witness who ostensibly could have corroborated Appellant's version of the facts." The remarks were certainly not prejudicial and hardly "unfavorable." The Assistant State's Attorney opened his argument to the jury by saying:

"One other point: Mr. Christensen in answer to my questions on the stand said that after he had

been arrested in this case Mr. Paine was at that time a neighbor who lived down the street, so he thought, and did he talk about this matter with him very much on the night in question, no, not much.

"What efforts did he make to get in touch with Mr. Paine to search for truth, shall we say, after he had an opportunity to do so and after he was arrested in this case, I submit to you not very much; and I leave the judgment on that point up to your common sense.

"As Your Honor has explained to you, Jesse Paine is not on trial. Nevertheless, we do have some other person in some part of the car. I'm not going to get into a big argument on whether it was the front seat or back seat, but there was someone else in the car the whole time this happened."

Finally, in closing, the Assistant State's Attorney responded to Appellant's rebuttal of his initial remarks as follows:

"The suggestion furthermore has been made that since the State has agents all over the place, maybe it could go down to Rio de Janeiro and bring Jesse Paine up here so we would be able to exonerate the Defendant in this case.

"I submit to you based on the evidence as presented in court today, and when I say "evidence," I meant to some extent what the Defendant has said, if Jesse Paine were in court somehow I really doubt if what he had to say would exonerate the Defendant very much.

"This is your decision. But he was there under circumstances which would lead one to reasonably believe that he wouldn't help out the Defendant too much in this case."

The State had inquired as to the identity and whereabouts of the missing witness. He was identified and admitted to be

a friend and neighbor of Appellant. The State then pressed those logical, if somewhat peripheral, questions as to what efforts had been used to locate the missing witness. This was accomplished by establishing Paine's personal affinity with Appellant as well as his residential propinquity. By this route the State sought to raise a question or suspicion in the minds of the jury presumably to create a natural inference unfavorable to Appellant because he had admittedly made no "serious effort" to bring Paine in as a witness. As so often happens, however, "the best laid schemes of mice an' men gang aft agley." [2] The temptation to ask just one question too many left him with the strong possibility of having created the opposite inference.

> "And if Jesse Paine were here today, presumably he would be able to corroborate everything you said, is that correct?
>
> A. That's correct."

Having brought the jury so far along the road in search of the missing witness, he left them at a cross road without direction. "Easy is the descent to Avernus," [3] it is the road back that's the long climb.

Having created the possibility of a favorable inference from the absence of the witness he was now compelled to destroy it in closing argument. In a case determined by little more than which one of two persons is to be believed, possible inferences, whether naturally or legally raised, become crucial. The State's comment did not go so far as to say, however, that the jury should assume that Paine's testimony would have been adverse to Appellant but only that it would not have been helpful, which quite likely is often all that can be assumed. Cf. *Burgess v. United States, supra,* 233. It did little more than attempt to neutralize the possibility of a favorable inference. Generally, broad latitude is given counsel in argument and we find nothing in this one prejudicial to Appellant. The return from Avernus

---

2. Sir Robert Burns, *"To a Mouse."*
3. Virgil's *Aeneid,* Bk 6, l. 126.

438

was carefully trod upon a narrow path. We need not decide whether a less dispassionate comment would have been appropriate or prejudicial.

*Judgment affirmed.*