ROBERT JUNIAN PIERCE, JR. AND NORMAN KEMP JACKSON *v.* STATE OF MARYLAND

[No. 504, September Term, 1976.]

*Decided February 4, 1977.*

The cause was argued before THOMPSON, LOWE and MELVIN, JJ.

*Bruce R. Harrison* for appellant Robert Junian Pierce, Jr.

Submitted on brief by *Michael S. Libowitz, Assigned Public Defender,* for appellant Norman Kemp Jackson.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Daniel J. Cassidy, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Appellants Pierce and Jackson were tried together and convicted of robbery with a deadly weapon and numerous related crimes, by a jury in the Circuit Court for Prince George's County. The testimony at trial indicated that the appellants and two other subjects attempted to rob the Hechinger's Department Store in Marlow Heights, Maryland. Both appellants were identified at trial by eyewitnesses. We will refrain from detailing the facts and evidence at length because, for the most part, they are not material to these appeals.

### Pierce

After raising three issues on appeal, appellant Pierce runs them together under a single argument. We will respond

to the first two in kind. Upon review we find his contention that a pretrial photographic identification was impermissibly suggestive to be totally without merit.[1] Nor are we convinced by his second contention that evidence had been suppressed by the prosecutor in violation of *Brady v. Maryland*, 373 U. S. 83. Our review found no *Brady* violation. To the contrary, we found *Brady* totally inapposite to the factual situation here.[2]

Although appellant's third assignment of error was also cursorily briefed, it is answered less simply. In light of the Court of Appeals' ruling in *Christensen v. State*, 274 Md. 133, appellant contends that the trial judge committed reversible error when he failed to grant a mistrial after having overruled appellant's objections to the prosecutor's attempts to invoke the "missing witness rule" in closing argument. Appellant also contends that, at least, the judge should have, on his own motion, stricken the remarks "from the jury's consideration".

Pierce, who took the stand on his own behalf, testified that he was not at the scene of the crime. He contended that before, after and during the time of the commission of the crime, he was with his friend Nathaniel "Pee Wee" Young at locations removed from the crime scene. Young was among four persons whom the State contended had committed the crime. He was not on trial however, and he did not testify. The prosecutor emphasized Young's absence and indicated

---

1. Appellant contends that there was conflict in testimony of the eyewitnesses and that the photographs used in the pretrial identification were manipulated. He neither supports this with argument nor does he indicate where in the record evidence indicative thereof may be found. "We cannot be expected to delve through the record to unearth factual support favorable to appellant and then seek out law to sustain his position." *Van Meter v. State*, 30 Md. App. 406, 408, *cert. den.* 5/25/76. Nevertheless, we did peruse the record and found the appellant's contention to be a specious one.

2. Appellant complained that although the police took preliminary nitric acid swabs of his hands to determine if he had fired a pistol recently, they decided not to submit the tests to the laboratory for neutron activation analysis because of the circumstances relating to when the test was taken, the weather, and the perspiration on appellant's hands.

that he was not produced by Pierce because he would not have supported Pierce's alibi:

"Now, further in this case Mr. Pierce, whose really only alibi witness is an individual by the name of Nathaniel Young, also known as Pee Wee, this man if he was present in court could, in fact, show the whereabouts of Mr. Pierce on this particular date. The only people that testified to the whereabouts of Mr. Young on this date was our witnesses, who put him right in that store and right in that parking lot shooting that gun at all those people. Those witnesses picked him out along with Mr. Pierce on this particular day. Why didn't they bring in Pee Wee, Nathaniel Young, to show his whereabouts? He never came in this courtroom, he never testified. The only one who testified to his whereabouts was the next door neighbor.

MR. HARRISON: I object to the comment of counsel.

THE COURT: Overruled. Proceed.

. . .

Now, in a criminal case it is a search for the truth. I through my prosecution of the case have tried to present to you all the witnesses that I felt would be beneficial in this case, in bringing out the truth.

I again ask you to ask yourselves where the alibi witnesses in this case are to establish the whereabouts of Mr. Jackson on this particular date, where are the people that back him up, and what he said? And for Mr. Pierce, where is the other individual that was with him, Nathaniel Young? Why aren't these people in court to testify.

MR. HARRISON: I object again, Your Honor.

THE COURT: Overruled."

The "missing witness rule",

> " . . . even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States,* 150 U. S. 118, 121.

A Court of Appeals' writ of certiorari was directed to our opinion in *Christensen v. State,* 21 Md. App. 428, wherein we had held that rule to be applicable in criminal cases, and the writ was granted:

> " . . . in order that we might consider Christensen's contention that application of the 'missing witness' rule in criminal cases is 'an unconstitutional deprivation of the defendant's right to confrontation and cross-examination as guaranteed under the Sixth Amendment of the United States Constitution and Article 21 of the Declaration of Rights in the Maryland Constitution' . . . ." *Christensen, supra,* 274 Md. at 134.

In light of the issue having been one of first impression in criminal cases in Maryland, this was a commendable issue for certiorari consideration. Regrettably, however, that question was never reached. The Court had an addendum upon its writ:

> "and that 'assuming the missing witness rule is not unconstitutional' that 'it [was not] applicable in the present case.' " *Id.* at 134.

We were reversed on the facts without having been enlightened on the law:

> "We shall not address ourselves to the first contention because we conclude that the rule is not applicable to this case. For the same reason we shall be obliged to reverse the conviction." *Id.* at 134.

Nor were we told whether our analysis of the cases, concluding in the determination that the missing witness rule is applicable in a criminal case, was correct or incorrect. The Court of Appeals relied upon, and adopted, as "the better and the majority rule" an exception quoted from 1 Wharton *Criminal Evidence* § 148:

> "No inference arises if the person not called as a witness by the defendant is a codefendant *or* an accomplice not presently on trial, or has already been convicted of the same offense as that for which the defendant is being prosecuted.' *Id.* at 251." *Id.* at 139-140.

Although it would appear that the Wharton exception has become the Maryland rule, it would seem apparent that the adoption of the exception presupposes the recognition of the rule. But that is neither what the Court of Appeals held, nor is it necessary for us to decide here. Here, as in *Christensen*, it is the exception with which we are concerned, not the rule.

Although Judge Smith (who wrote for the Court of Appeals in *Christensen*) emphasized by repetition that the holding there was restricted to "the facts of [that] case", the similarity of circumstances here casts the case in a beguilingly precedential light.[3]

In *Christensen* the absence of the witness was argued extensively (by the State, as indicative of an unfavorable inference, and by the accused, who contended that the absence redounded as well against the State, *Christensen v. State*, 21 Md. App. at 435-436), but the Court of Appeals did not reach the issue of the propriety of arguing, to the jury, inferences that were available to them from the absence of a witness. Judge Smith clearly outlined the limited issue to which the Court spoke in that case:

> "The critical question becomes whether the trial judge should or should not have granted the

**3.** The missing witness in this case, one Nathaniel Young, was admittedly an "accomplice not presently on trial", as was Mr. Paine in Christensen. Mr. Paine's complicity in the crime was part of the State's version of the case. This appears to be another limitation upon the applicability of Christensen. See 274 Md. at 140-141.

instruction requested by the defendant." 274 Md. at 139.

Because the Court decided that the trial judge had erred in denying the requested instruction, we were reversed, but on that issue alone.

However, when *Christensen* was presented to this Court, one of the issues raised, and met, was whether the trial court had erred in allowing " 'the State's Attorney to comment unfavorably upon the absence of a defense witness who ostensibly could have corroborated Appellant's version of the facts.' " 21 Md. App. at 435. Although the remarks there went considerably beyond those made in the case we now consider, we noted in our *Christensen* that:

> "The remarks were certainly not prejudicial and hardly 'unfavorable' " *Id.* at 435.

The prosecutor's remarks there, as those here,

> "did little more than attempt to neutralize the possibility of a favorable inference." 21 Md. App. at 437.

In this case appellant himself injected the issue by alibi testimony, indicating that he was with "Pee Wee" Young far removed from the crime scene.[4] It is certainly legitimate argument for the prosecutor to ask, then, why the witness was not there to say so. In holding that such argument was not improper we pointed out that:

> "Generally, broad latitude is given counsel in argument and we find nothing in this one prejudicial to Appellant." *Id.* at 437.

As we have pointed out, our reversal in *Christensen* by the Court of Appeals was expressly narrowed to the failure of the trial judge to give the requested instruction, and no such instruction was requested by Pierce in this case. We

---

4. In Christensen, the "Appellant meticulously avoided direct reference to, or identification of, the obviously absent potential witness." 21 Md. App. at 431.

further note that although the Court of Appeals was cognizant of the argument issue, 274 Md. at 138-139, it pointedly avoided reversing our holding on that issue. Nor did it criticize either our reasoning or our language in that regard and, we know from experience, that the Court of Appeals is not hesitant to point out the error of our ways when they do not agree with our reasoning or our result.

We have not changed our opinion that when an accused rests an alibi on an absent witness, it is not improper to argue the reasonableness of expecting the accused to justify or explain the absence. We hasten to add, however, that such argument is equally available against the State where the absent witness is said by the State to have been an accomplice.

In reading the Court of Appeals' *Christensen*, appellant was apparently misled into applying it over-broadly to cover his argument complaint, because of the reasoning behind the Wharton exception which the Court adopted as the Maryland rule. Judge Smith said:

> "The reason behind the rule is not difficult to divine. Defense counsel have been known to believe that the military's advice to its personnel that in the event of capture one should disclose only name, rank, and serial number has its merits in criminal cases in that what one does not say cannot be used against him. Accordingly, counsel for Christensen probably was correct in believing that, if Paine were summoned to the witness stand by Christensen, Paine's counsel might well advise him to invoke his constitutional right against self-incrimination, notwithstanding the fact that his testimony might serve to corroborate that of Christensen and that if he testified Paine might claim that the incriminating testimony of the prosecutrix was untrue. Under the facts of this case, a defendant might well be damaged if an accomplice or codefendant were called to the stand and then did not testify, claiming his privilege against self-incrimination." 274 Md. at 140.

Such rationale would, at first blush, appear applicable to argue the rule's inference, as well as failure to instruct the prohibitive exception, in an appropriate case. Yet there is a clear distinction between that which a trial judge *must* instruct a jury when requested and that which counsel *may* argue to it.

Providing that the court's instruction may be given any time after the close of evidence, Md. Rule 756 e. expressly points out that:

> "The giving of such instructions prior to the argument of counsel *shall not preclude counsel from arguing to the contrary*." (emphasis added).

If it is not apparent from that rule that the Court of Appeals recognizes the right of counsel to argue legal presumptions or legitimacy of inferences which may be contrary to Maryland law, the Court of Appeals' cases make it abundantly clear. They rest upon Maryland's unique blessing or burden, that "the Jury shall be the Judges of Law, as well as facts", Md. Const., Art. XV, § 5; from which it reasonably follows, that if the jury is the judge of the law, legal argument may be made to it. *Schanker v. State*, 208 Md. 15, 21; *Wilkerson v. State*, 171 Md. 287, 290; *Samson v. State*, 27 Md. App. 326. The right to argue conflicting interpretations of the law, or the application thereof in dubious factual situations, *e.g.*, *Schanker v. State, supra*, has been held proper even in the face of instructions to the contrary, *Wilson v. State*, 239 Md. 245, 255-256, without regard to Md. Rule 756 e. Because we have so recently spoken upon the right of counsel to argue relevant law to the jury (as well as the limitations upon that right), *Samson v. State, supra*, suffice to say the right is well preserved, both by the Court of Appeals and by this Court, as long as Maryland retains its unique constitutional provision.

Since we consider the overruling of appellant's objections to the prosecutor's argument proper, it follows that the judge did not abuse his discretion in denying a mistrial. We carry coals to Newcastle by adding that he did not err by failing to strike the arguments, *sua sponte*. Absent a request

for an instruction requesting the reverse missing witness rule adopted by *Christensen, supra,* there was no error by the court below.

### Jackson

Because appellant Jackson's defense did not rely upon an alibi which the missing witness Young might have supported or controverted, Pierce's complaint does not include appellant Jackson, who raised three of his own assignments of error:

> "I. The Court erred by excluding a defense witness from testifying because of a violation of the Sequestration Rule.
>
> II. The Court erred in not promptly and properly advising the jury as to the State's unsubstantiated question about the Appellant's prior record.
>
> III. The Court erred in allowing the State to improperly argue to the jury."

### I

### Violation of Sequestration

Appellant called Paula Jackson as a witness but admitted to the judge that she had been present in court in violation of sequestration, Md. Rule 753, which had been invoked at the request of appellant. A preliminary interrogation disclosed that she had been in the courtroom throughout the entire trial and had heard all of the testimony in the case. The court declined to permit her to testify, pointing out that:

> " . . . the purpose of Rule 753, the sequestration rule, is to prevent one prospective witness from being taught by hearing another witness' testimony. The application of the rule is to avoid any artificial harmony of testimony that would prevent the trier of the facts from truthfully weighing all the testimony, and it is also used to avoid any outright manufacturing of testimony.

> The rule was exerted on behalf of the parties in this case. The witness has been in this courtroom since the inception of the trial. The motion to not permit the witness to testify by the State, after having been called by the defendant, is granted and the objection is sustained."

In *McKnight v. State,* 33 Md. App. 280 (1976), we again pointed out that whether a witness's violation of sequestration should preclude that witness from testifying is a matter for the sound discretion of the trial judge. We find no abuse.

Appellant proffered that her testimony would substantiate the testimony of appellant — which she had heard. Such edification is precisely that which sequestration was intended to guard against. After reviewing all of the relevant factors in the record, we hold that the court acted within the limits of its discretion.

## II

### *Sua Sponte* Instructions

During the course of cross-examining appellant Jackson, the prosecutor asked:

> "Are you the same Norman Kemp Jackson convicted on November 4, 1973, of the charge of carrying a pistol without a license?"

A timely objection was sustained when it was pointed out (at the bench) that although convicted, appellant had not yet been sentenced. See Md. Code, Cts. Art., § 10-905. Appellant now complains because the court did not advise the jury immediately, "that the State did not mean to intimate that the appellant had been convicted of a crime."

Appellant relies upon *Woodell v. State,* 2 Md. App. 433, 439, where we held that when cross-examining on prior convictions a prosecutor who receives a negative response should either produce authenticated evidence of the judgment of conviction or:

> "If the State's Attorney chooses not to offer appropriate evidence of the prior conviction, he

should, under the dictates of *Cook* [*v. State*, 225 Md. 603], seek leave of court to explain to the jury that he disclaims any intimation from his question that the defendant had previously been convicted of such crime. Failure to do so may result in an appellate reversal of the conviction where the error cannot be deemed harmless, and the point is properly preserved for review on appeal." *Id.* at 439.

But that is not the question before us. Appellant's objection to the question was sustained. He received everything he asked for. Indeed, at the end of the case appellant was further benefited gratuitously by the judge's instruction to the jury that the question be disregarded:

"During the course of the trial there was a question propounded by the State's Attorney relative to a reference of prior criminal conduct on behalf of Mr. Jackson. You are to completely disregard that. I don't wish to amplify that particular part of the trial, but I tell you just for information purposes only, that if a person has been heretofore convicted that evidence would not be substantive evidence in the case, it would merely go to your consideration and evaluation of the credibility of the defendant as a witness."

Although we find *Woodell* inapposite, it is of some interest that we affirmed there, notwithstanding a flagrant violation of the principle espoused, because there was no preservation of the issue by objection, request for instruction or motion for mistrial. Here appellant's objection was sustained. He did not then ask the trial judge to instruct the jury that no unfavorable inference could be drawn from the question, but he received such an instruction at the end of the trial. Furthermore, there was no motion for a mistrial. Consequently, as in *Woodell*, the matter is not properly before us for review. Md. Rule 1085.

## III

### Improper Argument

The final question raises an issue that gives us passing concern; however, we certainly find no prejudice sufficient to warrant a reversal.

During their argument to the jury both of the appellants' counsels criticized the manner in which the State had conducted its investigation, the arrest, a pretrial photographic identification and the prosecution of the case. Counsel for appellant Pierce, Mr. Harrison, succinctly characterized Jackson's counsel's preceding summation:

> "Mr. King gave us a good, very good, analysis, sloppy police work."

While expressly hesitating to be critical generally of law enforcement, Mr. Harrison wandered into the respective fields of judicial actors:

> "The police, the prosecution, the defense and the courts, or vice versa, play a particular role, but all of it is geared to lead to the same thing, for the protection and preservation of society and the rights of the inhabitants therein. We are not antagonists. We are adversaries, the State and myself, but we are not antagonists. We both believe in the same thing. One, the preservation of rights of citizens; and, two, the preservation and rights of the defendant. The Court is an impartial arbiter over both of them, and the police are to investigate a criminal occurrence so that the State can find the truth and prosecute it with vigor."

Although these discussions strayed from the issues before the jury, the State decided that it would respond instead of complaining. It was this response which Jackson contends was highly prejudicial and requires reversal:

> "Now, both defendants' counsel have commented on the way the State has conducted the arrest,

investigation, and the prosecution of this particular case. They have commented on the photographic identification. Ironically, I was going through my files before I came down here today and I picked up a case which speaks of law enforcement involving a criminal case, and also photographic identification, and that is the case of United States v. Wade [388 U. S. 218]. This is the case that sets forth what the police did in this case, the photographic identification through the groups of photographs.

Now, in that case Justice White, who is a member of the Supreme Court of the United States, said:

> 'Law enforcement officers have the obligation to convict the guilty and to make sure they do not convict the innocent. They must be dedicated to making the criminal trial a procedure for the ascertainment of the true facts surrounding the commission of the crime. To this extent, our so-called adversary system is not adversary at all; nor should it be. But, defense counsel has no comparable obligation to ascertain or present the truth. Our system assigns him a different mission. He must be and is interested in preventing the conviction of the innocent, —

MR. KING: [Jackson's counsel] I would object to that. That is not rebuttal, reading that.

THE COURT: Overruled. Proceed.

MR. CASSIDY: [the prosecutor] "— but, absent a voluntary plea of guilty, we also insist that he defend his client whether he is innocent or guilty. The State has the obligation to present the evidence. Defense counsel need present nothing even if he knows what the truth is.'

That is what the Supreme Court said in regard to the roles of law enforcement officers and defense counsel in cases.

Mr. Harrison explained himself to be a Deus ex machina, which means God out of the sky, for his clients in this particular case.

MR. HARRISON: [Pierce's counsel] Means God out of a machine.

MR. CASSIDY: I stand corrected.

In this particular case that is exactly what his client needs. His client has been described by numerous witnesses as participating in this particular armed robbery.

Now, he has talked about many things in his closing argument, not very much had anything to do with the facts. He talked about Moses coming down from the mountains, and he quoted the one commandment I forgot. 'Thou shalt not steal, thou shalt not kill', are also important. They are important to the people of Prince George's County that have to live in the county."

The propriety of reading such matter to the jury is as questionable as is its relevance to the issue being tried. The reading of case law to a jury has been approved by the Court of Appeals, but the sanction carried the restriction that the law being read

"refer solely to relevant questions of law." *Brown v. State*, 222 Md. 290, 302.

Admitting that this reading from a dissenting and concurring opinion of a Supreme Court Justice contained no law, but merely an expression of the writer's view of the roles of court and law enforcement officers, the State submits that it was fair commentary in direct response to the attacks on the investigators and prosecutors, and that it applied also to the opening paragraphs of Mr. Harrison's argument from which it appeared that, but for the force of

gravity, he was in danger of ascending to Heaven like Elijah.[5]

Despite the questionable value of such appeals by defense counsel, the doctrine of retaliation [6] may explain the prosecutor's response but it cannot justify it. Although we do not consider such irrelevant attempts at eloquence to be professional misconduct as such, counsel should move with trepidation. See Code of Professional Responsibility, Disciplinary Rule DR7-106 (C) (1). See also A.B.A. *Standards Relating to the Prosecution Function*, § 5.8. The passage read was not relevant to any issue before the jury. Even if characterized as a retaliatory response, the excerpt was improper argument because it belittled not only the offending adversary, but was so general that it encompassed Mr. King, Jackson's attorney. While the latter's argument was critical of the manner in which officials had handled this case, it was directly relevant to the issues before the court. Mr. King had not digressed from the issues to the extent that counsel for Pierce had. The remarks read by the prosecutor embraced in a demeaning light the entire profession, by suggesting in a public forum that a defense counsel's sole objective is acquittal. *State v. Thornton*, 38 N.

5. "MR. HARRISON: Ladies and gentlemen of the jury. As Mr. Cassidy pointed out to you, and as His Honor pointed out, you have been one of the most attentive juries that I have had in my career, which spans some 22 years.

You know the law, what the law really is, is a search for the truth, that is what it is all about, and ever since Moses came down from the mountaintop with the tablet, with the Ten Commandments, that is what we have been trying to do, find out what the truth is. And one of those Commandments was, 'Thou shalt not bear false witness.' And that is what has happened in this case.

Now, if there are two things in my being that I will die for it is truth and beauty, and they are almost indistinguishable, because if beauty is the penultimate then truth is the ultimate, or vice versa, because in all which surrounds us, both animate and inanimate, all else is irrelevant.

Now, how do we get to it? Well, we lawyers and judges attend law schools, the cherished halls of Howard University, Harvard, Georgetown, et cetera, and we are taught certain rules, and to the layman it may seem dry, it may sometimes seem boring, and sometimes we may want to catch a nap or two, in fact sometimes we lawyers and judges even nod off from time to time, but it is man's attempt to do what Moses was commanded to do by the Lord, 'Thou shalt not.' "

6. *See, e.g.,*, Anderson, *Wharton's Criminal Law and Procedure* § 2083; 75 Am. Jur. 2d *Trial* § 233; 88 C.J.S. *Trial* § 194.

J. 380, 185 A. 2d 9, 19. It is equally improper to have utilized the imprimatur of absolute authority by quoting from "Justice White, who is a member of the Supreme Court of the United States," to cloak the prosecutorial team with impartiality. To have done so might have added weight to the prosecutor's influence and to the probative force of the evidence adduced. This could result in the juror's consciously or unconsciously adopting the prosecutor's view without applying their own independent judgment to the evidence. *Thornton, supra.* In exercising their discretion to permit reported cases to be read to the jury, trial judges should recognize that their discretion in such matters is one which courts ought seldom exercise, for the reason that such a practice would lead to confusion in trials, rather than enlightenment. *Cf. Barrett v. Lohmuller Bldg. Co.*, 151 Md. 133, 139-140.

We also observe that Mr. Harrison's opening remarks, while possibly appropriate in a theological setting, had little to justify them as relevant to the issues being tried. To some gullible jurors it may provide a touch of credibility to the argument of its exponent, but more likely jurors would feel demeaned by one who sought to persuade them by equating himself with the Almighty. While of questionable relevance in either event, it is irritatingly distracting and produces nothing upon which a factual circumstance should be decided. See DR7 — 106 (C) (1) *supra;* A.B.A. *Standards Relating to the Defense Function* § 7.8. While remaining sensitive to the broad scope permitted counsel in argument, see *Wilhelm v. State*, 272 Md. 404, trial judges should be vigilant gently to excise blatantly irrelevant attempts by counsel to beguile jurors. Had the defense *caqueterie* here been averted, very likely the prosecutor would not have sought succor and retaliation in Justice White's irrelevancies.

It should be apparent by now that we find neither Mr. Harrison's arguments nor the prosecutor's response to be paragons for embryonic attorneys to follow. But with regard to the issue raised, our concern is limited to whether the jury was actually misled or influenced in this case, to the

prejudice of the accused, by the remarks of the prosecutor. See *Wood v. State,* 192 Md. 643, 652. We find it highly unlikely.

We too fall back on language of the Supreme Court to express our own opinion; however, the reasoning upon which we rely is relevant to the issue before us. The Court addressed prejudicial prosecutorial remarks offered in argument which it viewed in the light we viewed the remarks here:

> "They were, we think, undignified and intemperate. They do not comport with the standards of propriety to be expected of the prosecutor. But it is quite another thing to say that these statements constituted prejudicial error. In the first place, it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this long trial that they would not appraise the evidence objectively and dispassionately. In the second place, this was not a weak case . . . . Of course, appeals to passion and prejudice may so poison the minds of jurors even in a strong case that an accused may be deprived of a fair trial. But each case necessarily turns on its own facts. And where, as here, the record convinces us that these statements were minor aberrations in a prolonged trial and not cumulative evidence of a proceeding dominated by passion and prejudice, reversal would not promote the ends of justice." *United States v. Socony-Vacuum Oil Co.,* 310 U. S. 150, 239-240, 84 L. Ed. 1129, 1177.

Having applied the "applicable test for prejudice" adopted in *Wilhelm, supra,* 272 Md. at 416, from *Gaither v. United States,* 413 F. 2d 1061, and finding none,[7] we will not reverse.

7. Any prejudice potential was further minimized by the court's instruction that:

> "Opening statements of counsel and final arguments are not of themselves evidence. The only evidence for you to consider is what you have seen and heard and observed from the witnesses on the witness stand and the exhibits that have been permitted in evidence for your consideration."

A second alleged prosecutorial error is without indicia of prejudice. Appellant complains that the prosecutor expounded upon a theory which went beyond the evidence. Our review does not so disclose. To the contrary, that which the prosecutor expressed after confessing prefatorily that "this is not evidence, this is my theory", could readily have been inferred from the evidence before the jury. It is not improper to propound theories that could inferentially be supported by the evidence.

*Judgments affirmed.*
*Costs to be paid by the appellants.*