470 A.2d 1301

John E. HAYES

v.

STATE of Maryland.

No. 505, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Feb. 7, 1984.

Certiorari Denied June 7, 1984.

490

Mark Colvin, Assigned Public Defender, with whom was Alan H. Murrell, Public Defender on the brief, for appellant.

Stephanie J. Lane, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland, Kurt L. Schmoke, State's Atty. for Baltimore City and Gertrude C. Bartel, Asst. State's Atty. for Baltimore City on the brief, for appellee.

Argued before WEANT, ALPERT and BELL, JJ.

BELL, Judge.

John E. Hayes was convicted by a jury in the Circuit Court for Baltimore City of theft over $300, and was sentenced to four years incarceration.

Hayes asks this Court to consider the following questions:

1. Did the trial court err in giving a missing witness instruction over Hayes' objection?

2. Did the trial court err in allowing the State to introduce evidence regarding a charge that had been severed from the instant case?

3. Did the trial court abuse its discretion in refusing to declare a mistrial after a prosecution witness improperly testified to Hayes' involvement in crimes unrelated to the offense charged?

Because our answer to the first question is "yes", we need not consider the other two issues.

## FACTS

On February 7, 1982, the home of Lucia Midkiff was burglarized. The burglary was committed by Ted Hickman

and Jay Connelly. The items taken during the burglary included jewelry, silver, silverplate, stereos and radios worth approximately $7,285. On March 10, 1982, Lucia Midkiff identified some of the silverplate at the Baltimore City Police Department. On March 12, Midkiff identified a monocle, a necklace and a collar pin on display at an antique shop owned by Hayes. Hayes was subsequently arrested..

At the trial, Hickman related to the jury that the proceeds of the burglary were put in a trash can and moved to Paul Bentley's garage, from which location, Paul Bentley was going to sell the merchandise. Hickman further testified that John Hayes (the appellant), Jay Connelly, and Paul Bentley were all present at the garage, and that Hayes had purchased a silver pitcher, silverplate, and some jewelry for $125.00.

Bentley testified that he had met Hayes at a pawn shop where Hayes gave him a card and asked Bentley to call if obtained any more gold or silver. About four weeks later, Bentley called Hayes and invited him to look at some items he had for sale. Hayes went to Bentley's garage and bought the subject jewelry, silver, and silverplate. In response to a question about the Midkiff burglary, Bentley told the jury:

> In respect to Mrs. Midkiff's burglary, he said . . . as far as I'm concerned, it's yours. I don't know where it comes from. I really don't care . . . in respect to the other burglaries.

Hayes promptly moved for a mistrial, but the motion was denied.

Over objection, Lance Keimig related to the jury that he sold Hayes "several boxes of glass and china [which had been] taken from my parents' house without their knowledge." Keimig allegedly was not involved in the Midkiff burglary, but participated in the Keimig theft which was the subject of a separate indictment.

Detective Dan Gunther testified that he spoke to Hayes after the arrest and that Hayes acknowledged that on or about February 10, 1982, he had purchased a bag of jewelry,

including the monocle, the necklace and the collar pin, for twenty-five dollars from Paul Bentley and Lance Keimig. The purchase occurred in a garage behind Bentley's house. Hayes saw a trash can full of silverplate in the garage but he did not purchase any of it. Hayes said that he threw away all of the jewelry except the monocle, necklace and collar pin. Sometime later Hayes related to Gunther that he had purchased from Lance Keimig a clock with a broken dome. Gunther further narrated, over objection, that on March 15, 1982, he seized various items of glassware and china from Hayes' home.

The defense conceded that Hayes had purchased the monocle, the necklace and the collar pin, but contended that when he did so he had no reason to believe they were stolen property.

Hayes acknowledged that on February 10, 1982, he went to Bentley's house in response to a call from Bentley. There, he purchased the monocle, necklace and collar pin. He said that other than those three items there was no jewelry in the garage and that only he, Bentley, and Keimig were present.

Hayes next saw Bentley and Keimig on February 18, 1982, at his shop. At that time, he bought two boxes of glassware for $100 and accepted a cracked dome clock on consignment. Hayes further testified that he gave the police a "full statement" in which he identified Bentley and Keimig as the individuals who sold him the items stolen from the Midkiff residence.

Hayes had stated that he was driven to the Bentley residence on February 10, 1982, by Joseph Giordano, his brother-in-law. While the trial was in progress, the prosecutor advised defense counsel that Giordano, who was under summons by Hayes, had been arrested and was in the lock-up on an unrelated matter. The prosecutor also informed defense counsel that Giordano had a prior conviction for receiving stolen property. Hayes decided not to call Giordano. Neither counsel requested a missing witness in-

struction; nevertheless, the judge told counsel that a missing witness instruction would be given. Hayes objected for a number of reasons including that Giordano was not "peculiarly" within his power to call, and that the witness would not make a good impression because of being in the lock-up all day. In addition, the defense was concerned about the effect of the prior conviction of the witness.

The court announced that it would give the instruction in a way that if the witness was equally available to both sides, "then the adverse inference need not arise." Counsel for Hayes chose not to argue to the jury that the inference did not apply because Giordano was equally available to the State. The court was true to its word and instructed the jury in relevant part as follows:

> Members of the Jury, I instruct you that where it is logical or reasonable that a party would call a particular witness and the party fails to call such a witness, the law says that there is an inference that the testimony that that witness would have given would have been adverse to the one who logically would have called him. But that inference need not arise if the testimony would be cumulative, repetitive. It need not arise if both sides could have called the witness, and it need not arise if the testimony would have been unimportant.

Defense counsel repeated his objection to the instruction.

*Did the trial court err in giving a missing witness instruction over Hayes' objection?*

■ Hayes contends the court erred in giving the missing witness instruction because Giordano was not "peculiarly" within his control. The instruction provides that if a party (Hayes) has it peculiarly within his control to produce a witness (Giordano) whose testimony would elucidate the transaction, his failure to call the witness permits an inference that the witness' testimony would have been unfavorable to that party. The witness must be "peculiarly available" to the party against whom the inference would be imposed. The missing witness instruction is not appropriate

where the witness is equally available to the other side. *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); *See, Christensen v. State,* 274 Md. 133, 134–35, 333 A.2d 45 (1975); *Yuen v. State,* 43 Md.App. 109, 112–14, 403 A.2d 819 (1979); Underhill, Criminal Evidence, Section 45 (rev. 6th ed. P. Herrick 1973).

We hold the court erred in giving the missing witness instruction for two reasons: (a) Giordano was not peculiarly within the control of Hayes; (b) there was no factual predicate before the jury upon which they could rationally decide whether and how to apply this instruction.

The missing witness rule originated in civil cases.

■ The Court of Appeals of Maryland has consistently applied this rule in civil cases and held that where a party fails to take the stand to testify as to facts peculiarly within his knowledge, or fails to produce evidence (*e.g.,* testimony by certain witnesses) the fact finder may infer that the testimony not produced would have been unfavorable to that party. *Chalkley v. Chalkley,* 236 Md. 329, 203 A.2d 877 (1964). *Dawson v. Waltemeyer,* 91 Md. 328, 46 A. 994 (1900). In civil cases, the unfavorable inference applies where it would be most natural under the circumstances for a party to speak, or present evidence. *Brooks v. Daley,* 242 Md. 185, 194, 218 A.2d 184 (1966). Professor Wigmore states the rule in regard to permissible inferences to be drawn from a party's failure to testify as follows:

> It would be generally agreed, to be sure, that the mere fact of the party's failure to testify is not of itself open to inference; it is his failure when he could be a useful and natural witness . . . that is significant. 2 Wigmore on Evidence (3d ed.) § 289, p. 173.

The Supreme Court in applying the rule to criminal cases articulated the rule somewhat more restrictively than Professor Wigmore, in that the witness must not only be "naturally" accessible to the party but must be "peculiarly" so. The Court said:

The rule even in criminal cases, is that if a party has it *peculiarly within his power* to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the *presumption that the testimony, if produced, would be unfavorable. Graves v. United States, supra,* 150 U.S. at 121, 14 S.Ct. at 41 (Emphasis added).

The Court of Appeals for the District of Columbia in *Conyers v. United States,* 237 A.2d 838 (1968), citing *Pennewell v. United States,* 353 F.2d 870 (D.C.Cir.1965) further stated:

The corollary proposition that *no presumption* arises from the failure of one party to call a witness *if* that *witness is equally* available to both parties is also well established. * * *

The use of the missing witness instruction in criminal cases has been addressed by the courts of Maryland with varying emphases. *See e.g., Christensen v. State,* 274 Md. 133, 333 A.2d 45 (1975) (granting instruction was reversible error where the witness was alleged accomplice); *Nelson v. State,* 5 Md.App. 109, 245 A.2d 606 (1968) (instruction properly rejected where there was no evidence the testimony would be other than cumulative); *Winegan v. State,* 10 Md.App. 196, 268 A.2d 585 (1970) (instruction properly denied where there was no evidence testimony would be other than cumulative); *Simpson v. State,* 34 Md.App. 378, 367 A.2d 66 (1977) (granting instruction was reversible error because the missing witness would have been implicated in another crime according to defendant's proffered testimony); *Briscoe v. State,* 40 Md.App. 120, 388 A.2d 153 (1978) (instruction properly rejected because the witness would have testified to scientific tests which were available to both sides). *Hutchinson v. State,* 41 Md.App. 569, 398 A.2d 451, *affirmed* 287 Md. 198, 411 A.2d 1035 (1979) (instruction properly denied where witness was equally available to either side); *Yuen v. State,* 43 Md.App. 109, 403 A.2d 819 (1979) (instruction properly denied because witness was available to both sides).

In *Pierce v. State,* 34 Md.App. 654, 369 A.2d 140 (1977) the issue of the missing witness was raised because the prosecutor argued the inferences to be drawn to the jury. This was upheld on the basis of what is now Md.Rule 757 g which in turn rests "upon Maryland's unique blessing or burden, that 'the jury shall be the Judges of Law, as well as facts.' Md. Const. Art. XV § 5" *Pierce, supra,* 662, 369 A.2d 140. Although this theory was somewhat modified in *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980), it still applies to the facts of this case.[1]

The Court of Appeals of Maryland first considered the use of the missing witness instruction in criminal cases in *Christensen v. State,* 274 Md. 133, 333 A.2d 45 (1975). Christensen was convicted of attempted rape. This Court affirmed the conviction. *Christensen v. State,* 21 Md.App. 428, 320 A.2d 276 (1974). The Court of Appeals granted certiorari in order to consider Christensen's contention that application of the "missing witness" rule in criminal cases is

> "an unconstitutional deprivation of the defendant's right to confrontation and cross examination as guaranteed under the Sixth Amendment of the United States Constitution and Article 21 of the Declaration of Rights in the Maryland Constitution," and that "assuming the missing witness rule is not unconstitutional" that "it [was not] applicable to the present case."

The Court did not address the contention regarding Christensen's right of confrontation because it concluded the rule did not apply to the case.

---

1. In *Stevenson, supra,* the Court of Appeals upheld the basic principle stating 289 Md. at p. 178, 423 A.2d 558:

    "the jury was not granted . . . the power to decide all matters that may be correctly included under the generic label—'law'. Rather, its authority is limited to deciding 'the law of the crime', as well as 'the legal effect of the evidence before [the jury] . . .' And this Court has consistently interpreted this constitutional provision as restraining the jury's law deciding power to this limited, albeit important area."

    *See also, Guardino v. State,* 50 Md.App. 695, 440 A.2d 1101 (1982).

In *Christensen v. State, supra,* neither Christensen nor the State was able to locate the missing witness. There was no testimony before the jury on that subject. This Court concluded, however, that there was testimony from which the jury could infer that the witness was peculiarly available to the defendants and hence that the instruction should have been given. The Court based its determination on the fact that the State had absolutely no idea where the witness was or how to reach him. On the other hand, the defense knew who the witness was and acknowledged that its efforts to find the witness had been minimal. The Court of Appeals reversed, holding that the facts presented an exception to the missing witness rule and that no such instruction should have been given. The Court of Appeals relied on 1 Wharton Criminal Evidence § 148 (13th ed. C. Torcia 1972) where it is stated:

No inference arises if the person not called as a witness by the defendant is a co-defendant or an accomplice not presently on trial, or has already been convicted of the same offense as that for which the defendant is being prosecuted. *Christensen v. State,* supra 274 Md. at 139–140, 333 A.2d 45.

This Court, in *Yuen v. State, supra,* had occasion to determine whether a witness was peculiarly available to one party. There, a witness refused to speak with the defense except through the State's Attorney's Office. The witness was, however, available at trial to the defense by subpoena. The Court held she was, therefore, not peculiarly available to the State and refused to grant a missing witness instruction. There was no testimony before the jury as to her availability or unavailability to either side. We said in *Yuen* that the missing witness rule

". . . precludes from [its] operation those witnesses whose production is not 'peculiarly' within the power of the party against whom the inference may be drawn. *Graves v. United States,* 150 U.S. at 121 [14 S.Ct. at 41]. There is no such presumption or inference where the witness is available to both sides. *Christensen v. State,* 274 Md. at 134

[333 A.2d 45]. Although [witness] refused to speak with appellants' attorney before trial, appellants admitted at argument that they were aware of her availability through the State's Attorney's office. They did not choose to subpoena her presumably relying upon the fact that the State had indicated that she would be a witness. But [witness] was available to them by subpoena and they cannot excuse their failure to subpoena her by claiming to have relied on the State's indication that she would be called. She was, therefore, 'equally available' and so presumed unless appellants showed the court below that they had exhausted the avenues available to them to produce her. *See Christensen v. State,* 274 Md. 133 [333 A.2d 45].

We went on to state:

[W]hat is referred to as a presumption here . . . is really a permissible inference. . . . The instruction becomes merely a highlighting of a significant void in a party's case; but even in the absence of an instruction, the jury is not precluded from so inferring.

. . . . .

The failure to grant an affirmative instruction does not remove the availability of the inference. As a consequence, whatever prejudice may usually come from not giving an advisory instruction is diminished, because the inferential thought process is still available. The prejudice is simply that such an inference is not given preferred instructional attention over any other inferences available from the testimony or absence of testimony. 43 Md.App. at 112–113, 403 A.2d 819.

■ The primary justification in criminal cases for the stringent requirement that the witness be "peculiarly" within the control of the party is the need to protect the defendant's Sixth Amendment right of confrontation. The Sixth Amendment grants to the defendant in a criminal prosecution the right to confront adverse witnesses. This right, held applicable to the states in *Pointer v. Texas,* 380

U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), seeks to insure that the factfinder observe the demeanor of the testifying witnesses, and that the defendant have the opportunity to cross-examine any witness testifying against him. The missing witness instruction, if given when a witness is not peculiarly within the control of the defendant, unfairly permits the jury to infer that the witness' testimony would be unfavorable to the defendant, without affording the defendant an opportunity to interrogate the witness in the presence of the jury. Thus the requirement, that the witness be peculiarly within the control of the party, must be strictly adhered to.

Several states have held that a witness is peculiarly within the control of a party when the witness is closely related to that party. For example, in *Brown v. State,* 200 Miss. 881, 27 So.2d 838 (1946), the defense failed to call the accused's brother who was present during the commission of an assault with intent to murder. The Supreme Court of Mississippi said that the fact that a witness might be brought into court by compulsory process by either party did not necessarily make such witness equally accessible to both. The court further stated that the purpose of a witness is to testify impartially and fairly, and that it certainly is against nature to expect a brother to aid the prosecution of his own sister who was a co-defendant. The witness was, therefore, deemed peculiarly available to the defendant. *See also, Contreras v. State,* 242 Ga. 369, 249 S.E.2d 56 (1978) (prosecutor's comment on failure to call alibi witnesses, mother and sister, was proper); *People v. Johnson,* 74 Ill.App.3d 1037, 30 Ill.Dec. 385, 393 N.E.2d 40 (1979) (prosecutor's comments on failure of defendant to call parents as alibi witness held proper). On the other hand, in *People v. Smith,* 121 Cal. 355, 53 P. 802 (1898), the court held that failure of the defendant, accused of murder, to call his brother, who was the only eye witness, as a witness could not raise an unfavorable inference.

■■■ Taking into consideration what other jurisdictions have held and what Maryland Courts have stated, particularly in *Yuen, supra,* we hold that Giordano was not "peculiarly available" or "within the control" of Hayes, and the instruction should not have been given. If the witness in *Yuen* was not peculiarly available to the State notwithstanding the fact that she had refused to speak with defense counsel, was in a federal witness protection program, and was sympathetic to the prosecution, then, Giordano, who was in the State's custody was certainly not peculiarly available to Hayes. Nor do we believe the instruction should have been given simply because Giordano was Hayes' brother-in-law. A witness will not necessarily testify favorably on behalf of his sister's husband. Furthermore, giving the missing witness instruction, over objection, necessarily infringed upon Hayes' Sixth Amendment right of confrontation. Since the jury had no way of knowing what Giordano would have said, the judges' emphasis on the "missing witness" permitted the jury to infer Giordano's testimony would be unfavorable to Hayes, without giving Hayes an opportunity to interrogate or cross-examine Giordano.

■■■ We are unable to find the court's error to be harmless beyond a reasonable doubt under the standard set forth in *Dorsey v. State,* 276 Md. 638, 350 A.2d 665 (1976), for several reasons. First, in this case, the main issue before the jury was who to believe—the State's witnesses, including Bentley, who claimed Hayes knew the property had been stolen, or Hayes, who testified that he had no reason to suspect that the property had been stolen, and that he believed he was engaging in a legitimate business transaction. As this Court noted in *Christensen, supra,* 21 Md.App. at p. 437, 320 A.2d 276:

> In a case determined by little more than which of two persons is to be believed, possible inferences, whether naturally or legally raised, become crucial.

Since Giordano's testimony could well have reinforced the credibility of Hayes, the 'highlighting' by the court of the

inference that Giordano would testify unfavorably was crucial and prejudicial. Secondly, the giving of the instruction by the court in and of itself unfairly emphasizes the fact that Hayes did not call a particular witness. A reasonable person, upon hearing the instruction, would most likely give credence to it and infer that the missing witness' testimony would be unfavorable. Thirdly, since the instruction was couched in very general terms and no factual predicate was laid upon which the jury could intelligently decide whether to apply the rule, the instruction could have tended to mislead the jury. In light of the above, we cannot find that the error was harmless beyond a reasonable doubt.

■ Unless the court finds that the testimony is material, non-cumulative and the witness peculiarly available to one party, instructing the jury on the inference to be drawn from failure to call a witness in a criminal case is prejudicial error.

JUDGMENT REVERSED AND CASE REMANDED FOR A NEW TRIAL. COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.